Eddie INSKEEP, Employee *v.*
EMERSON ELECTRIC COMPANY, Employer

CA 98-502                                          983 S.W.2d 132

Court of Appeals of Arkansas
Division III
Opinion delivered November 11, 1998

[Petition for rehearing denied December 16, 1998.]

*Snellgrove, Laser, Langley , Lovett, & Culpepper*, by: *Todd Williams*, for appellant.

*Bud Roberts*, for appellee.

MARGARET MEADS, Judge. This is an appeal from the Arkansas Workers' Compensation Commission. Appellant, a truck driver for appellee Emerson Electric, suffered a compensable injury in September 1977 when the truck that he was driving overturned, pinning him in the truck for several hours and killing his driving partner. Appellant suffered injuries to his left leg and spine that required two leg surgeries and five back surgeries, including fusions from L3 to the sacrum. He received permanent partial impairment ratings of twenty-five percent to the left leg and thirty-five percent to the body as a whole for the spine. Nonetheless, appellant returned to work for Emerson in 1986. On January 2, 1996, appellant was involved in two accidents as a result of icy road conditions while driving a tractor-trailer rig with a partner. At the time the first accident occurred, appellant was in the sleeper; he was driving when the second accident occurred.

At a hearing held August 7, 1996, on appellant's workers' compensation claim, appellant contended that he was entitled to payment of further medical expenses and six months of additional temporary total disability benefits. Issues regarding change of physician and extent of permanent disability were reserved. On September 16, 1996, an administrative law judge (ALJ) entered an order holding that appellant sustained an aggravation, or new injury, of his preexisting condition on January 2, 1996; that as a result of his compensable injuries he was entitled to temporary total disability benefits beginning with his last day worked and ending on February 7, 1996; and that he is entitled to payment of all medical expenses incurred for treatment by Dr. Tyrer subsequent to January 2, 1996. No appeal was taken from this order.

On January 8, 1997, a hearing was held on the issues of change of physician, additional permanent partial impairment rating, and wage-loss disability. The transcript and exhibits from the August 7, 1996, hearing were incorporated by reference, and additional evidence was received. In an opinion entered February 25, 1997, the ALJ found that appellant did not sustain additional permanent partial impairment to the body as a whole as a result of the January 2, 1996, accidents; that appellant sustained a thirty-five percent impairment to his wage-earning capacity; and that appellant's authorized family physician, Dr. Shedd, is authorized to refer appellant to Dr. Larry Mahon for future medical maintenance as necessary. In a supplemental opinion filed March 24, 1997, the ALJ found that appellant sustained an additional permanent partial impairment of five percent to the body as a whole as a result of the January 2, 1996, incidents, and that appellant's compensation rate should be based upon his January 1996 earnings.

The full Commission affirmed the ALJ's award of a thirty-five percent wage-loss disability and the change of physician. However, it found that appellant failed to prove that he sustained an additional five percent permanent anatomical impairment and that appellant's compensation rate should be based on his 1977 earnings rate. Appellant appeals from the reversal of the five percent anatomical impairment and the application of his 1977 earnings.

There was evidence that appellant continued to have problems with his leg and back after he returned to work in 1986, and that after the January 2, 1996, accidents he hurt between his shoulder blades and in the upper part of his back. On January 4, 1996, Dr. Shedd took appellant off work. Appellant was subsequently treated by Dr. Roy Tyrer, Jr., and underwent an independent medical evaluation by Dr. Larry Mahon. Appellant has not been physically able to drive a truck since the January 2 accidents. Since that time, appellant has not worked for anyone, but he had a construction business in which he did supervisory work and actual labor.

Appellant testified, however, that he stopped working in that business in November 1996 and turned it over to his son, because he got to the point where he was not having "a good day." Mentally and physically he could not do the work. His bad days got closer together, he had no one to take care of him "prescription wise," and it got to the point where when he tried to do anything at all, he would get "down" and could not get "up." He said that he would just go home. Appellant now has constant pain; there are days that he cannot get out of the house because of pain even if he has not done anything. The pain comes all of a sudden, it "knocks him to his knees," and it is all he can do to get back "up."

Appellant testified further that he now has problems that he did not have prior to January 1996. The upper part of his back gives him problems; he cannot raise his arm; it feels as if he is having a heart attack; the pain is like a knife and limits his motion on his right side. He said that he is worse now than he was before the 1996 accidents.

Dr. Tyrer reported on January 29, 1996, that appellant had been troubled with upper lumbar discomfort extending into the interscapular area since the January accidents. His impression was mild to moderate thoracal lumbar muscle sprain. He did not feel that appellant sustained significant additional injury in the January accidents. A January 31, 1996, isotope bone scan showed increased activity in the lower lumbar area where appellant had the prior spinal fusion, and increased activity in the right rib cage and

in the left tibia below the knee, both of which are areas where appellant had a prior injury. An MRI of appellant's thoracic spine performed March 18, 1996, showed slight disc dessication in the mid-thoracic area without evidence of intervertebral disc herniation or other definite abnormality. On April 17, 1996, Dr. Tyrer reported that he told appellant that he did not believe any additional treatment was indicated or would be beneficial, and he did not think that the January accidents had any appreciable adverse effect on appellant's preexisting chronic low-back problem.

Dr. Larry Mahon's report dated June 3, 1996, recites that appellant has pain in his low back and numbness in his toes, the back of his right thigh, and his calf. He also has some aching pain between his shoulders and aching discomfort of the left lower leg associated with weather changes. AP and lateral x-rays of his thoracic spine reveal extensive osteoarthritis with bone spurring. Based upon the history, Dr. Mahon opined that appellant's new complaints concerning his mid-thoracic area were apparently due to one of the January 1996 injuries. It was his further opinion that appellant sustained permanent aggravation of his prior existing lumbar pathology as a result of the January 1996 injury, and assuming appellant's history was correct, the permanent aggravation contributed an additional five percent permanent partial impairment to the body as a whole.

Dr. Mahon wrote that he was surprised appellant was able to perform the duties of a truck driver since 1982 [sic] with his history of chronic back problems and multiple surgeries; that he must be a rather stoic individual very desirous of remaining employed; that his work tolerance during that time was marginal; and that the additional injuries and symptomatology resulted in appellant's inability to return to that level of activity.

On appeal, appellant first argues that the Commission erred in denying the additional five percent permanent partial anatomical impairment because he failed to establish any additional impairment to the lumbar spine with "objective findings." Appellant contends that fair-minded persons with the same evidence before them could not have reached the Commission's conclusion.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). The Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995). Conflicts in the medical evidence are a question of fact for the Commission, and when the Commission chooses to accept the testimony of one physician over another in such cases, we are powerless to reverse the decision. *Henson v. Club Prods.*, 22 Ark. App. 136, 736 S.W.2d 290 (1987). However, these standards must not totally insulate the Commission from judicial review; to do so would render this court's function meaningless in workers' compensation cases. *Wade v. Mr. C. Cavenaugh's*, 25 Ark. App. 237, 756 S.W.2d 923 (1988).

Here, Dr. Tyrer stated that he did not feel that appellant sustained significant additional injury in the January accidents, and that he did not believe the January accidents had any appreciable adverse effect on appellant's preexisting low-back problem. This evidence constitutes substantial evidence to support the Commission's findings on the issue of additional impairment to appellant's lumbar spine, and we affirm the Commission's findings on this issue.

Appellant's next two arguments are related and concern the proper wage rate upon which to base appellant's thirty-five percent wage-loss disability. The Commission found, after considering appellant's age, education, work experience and the nature of the problems which he experienced as a result of the 1996 accidents, that the ALJ's award of a thirty-five percent impairment to appellant's wage-earning capacity was correct. It noted that appellant continued to work as a truck driver until the accidents

on January 2, 1996, and that the medical evidence establishes that he is not now physically capable of returning to truck driving. It noted further that both Dr. Mahon and Dr. Tyrer expressed surprise that appellant was able to continue his employment as a truck driver as long as he did in light of his low-back abnormalities. The Commission found, however, that appellant's "time of accident" was the date of appellant's 1977 injury.

■ ■ Arkansas Code Annotated section 11-9-518(a)(1) (Repl. 1996) provides that compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident. Arkansas Code Annotated section 11-9-102(18) (Supp. 1997) defines "time of accident" or "date of accident" as the time or date of the occurrence of the accidental incident from which compensable injury, disability, or death results. Here, despite his 1977 accident, appellant was able to continue driving from 1986 until the accidents that occurred on January 2, 1996, and it was only after those accidents that appellant suffered any loss of earnings. Thus, appellant's compensable wage-loss disability resulted from the 1996 incidents. Pursuant to the above statutes, the date of accident is 1996, and appellant's compensation rate should be based on his 1996 earnings and the 1996 maximum rate. We therefore reverse and remand on this point for the Commission to determine appellant's 1996 earnings, and for entry of an order consistent with this opinion.

Affirmed in part; reversed and remanded in part.

ROBBINS, C.J., and STROUD, J., agree.