John HOLLOWAY *v.* RAY WHITE LUMBER COMPANY and Silvey Companies

98-1217                                    990 S.W.2d 526

Supreme Court of Arkansas
Opinion delivered May 20, 1999

*Eric G. Hughes*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *David Landis* and *Mark Alan Mayfield*, for appellee.

T OM GLAZE, Justice. Ray White Lumber Company and Silvey Companies (hereafter Ray White or Company) petitioned our court for review of an unpublished opinion of the court of appeals delivered on September 16, 1998, wherein the appellate court remanded John Holloway's workers' compensation claim. The court of appeals concluded that, because the Workers' Compensation Commission made some statements that were contrary to the record in its decision denying Holloway's claim, the case should be remanded so the Commission could reexamine its findings and reconcile the discrepancies. In other words, the appellate court declined to draw any conclusions or decide the

case because it found factual inconsistencies in the record. Ray White counters that the court of appeals' decision to remand this case conflicts with this court's standard of review in these matters as set out in *Buckeye Cotton Oil v. McCoy*, 272 Ark. 272, 613 S.W.2d 590 (1981). Because the Company argues that the record reflects there is substantial medical evidence to support the Commission's decision, it asserts the appellate court erred in refusing to affirm the Commission. We granted jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(5) and (e)(ii). To decide whether the Commission should be affirmed or reversed requires us to consider the relevant procedural and substantive history of this case.

This litigation stems from Holloway's claim that, on August 13, 1991, he sustained a compensable injury as a result of pulling lumber off a "green-chain." He said that, when he pulled a one-by-twelve, his feet slipped out from under him and the board "jumped" and popped his arm into the air like a slingshot. He related that it felt like someone stuck a knife or an ice pick in his wrist. Holloway was initially seen on August 26, 1991, by Dr. Michael Ford who subsequently referred Holloway to Kevin McLeod, an orthopedist. Thereafter, Ray White sent Holloway to Dr. Marcia Hixson, a Little Rock orthopedist, who became Holloway's treating physician.

Ray White recognized Holloway's injury as compensable and paid for surgery on his median nerve. However, the Company later denied the diagnosis of carpal tunnel syndrome (CTS) was work related and refused to pay for surgery to release the carpal tunnel. After a hearing in 1995, the administrative law judge agreed with the Company. The law judge found that, in 1981, Holloway sustained a nonrelated work injury to the same arm he injured on August 13, 1991, and that Dr. Edward Saer, the then-treating physician, opined Holloway would never have a totally normal hand. After additionally setting out some of Holloway's medical history since his August 13, 1991 accident, the law judge concluded Holloway had failed to prove by a preponderance of the evidence that his carpal tunnel condition was related to his compensable injury. Holloway appealed the law judge's decision to

the Commission, which affirmed. Holloway then appealed to the court of appeals, and because the Commission failed to adopt the law judge's opinion or to make its own findings of fact, the court of appeals, in June of 1997, returned the case to the Commission with directions to make findings. Ray White did not appeal that decision. Instead, the Commission received the case on remand and, in a 2-1 decision rendered on August 27, 1997, it again found Holloway failed to prove his carpal tunnel condition was related to his August 13, 1991 compensable injury. This time the Commission adopted the administrative law judge's findings and opinion. It is this second opinion of the Commission, which the court of appeals determined should be remanded because of factual inconsistencies, that is at issue here.

As alluded to earlier, Ray White argues the appellate court was obliged to view the evidence in the light most favorable to the Commission's decision and uphold that decision if supported by substantial evidence. While we agree with the rule of review espoused by the Company, we disagree that the *McCoy* holding it cites controls the situation now before us. In *McCoy*, upon conflicting medical testimony, the Commission found the claimant had failed to prove her condition arose out of her employment. On appeal, the court of appeals, without directly addressing the question of substantial evidence, found the proof to be inconclusive and sent the case back to the Commission for further investigation with the possible employment of a medical examiner pursuant to Ark. Stat. Ann. § 81-1319(i) (Repl. 1976) (current version at Ark. Code Ann. § 11-9-811 (Repl. 1996)). The *McCoy* court reversed the court of appeals and held that only the Commission could require a medical examination. Because there was medical testimony in the record to support the Commission's decision denying the employee's claim, this court affirmed.

We do not view the instant case as one where the court of appeals found the medical proof before the Commission to be inconclusive or where there was no substantial evidence in the record that could support the Commission's denial of Holloway's claim. Rather, Holloway submits that the Commission based its

decision on certain erroneous factual findings, and as a result, the case should be reversed and remanded.[1] We agree.

■ ■ It is well settled, as pointed out by Ray White and the *McCoy* decision, that appellate courts view the evidence in the light most favorable to the Commission's decision and affirm that decision when it is supported by substantial evidence. *See Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). Our court has defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 513. The Commission has the duty of weighing evidence, and if the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of testimony it deems worthy of belief. *Id.*

In reviewing the Commission's second opinion now on appeal, Holloway points out that the Commission determined that four highly competent physicians were unable to attribute Holloway's carpal tunnel problems to his August 13, 1991 compensable injury,[2] and in making that finding, the Commission mentioned only three of the four doctors — Marcia Hixson, Earl Peeples, and Paul Tucker. Of course, the Commission was not required to set out all four doctors' opinions, but when it mentioned Hixson's opinion, the Commission did so erroneously. As already discussed, Dr. Hixson was Holloway's treating physician, and while not noted in the Commission's findings, she opined on March 11 and March 25 of 1994 that Holloway's CTS was a result of his August 13, 1991 injury. Instead, the Commission seemed to base its decision on an earlier statement made by Hixson in June of 1992 where she said that Holloway should be assigned a 20% impairment rating of the right upper extremity, but was unable to state how much of that impairment rating was attributable to the

---

[1] The court of appeals appeared only to remand this case, but the reason for remanding is based on error which requires a reversal.

[2] The record reflects Holloway had been seen by doctors Michael Ford, Kevin McLeod, Paul Tucker, David A. Miles, Marcia Hixson, and Earl Peeples. However, Ford offered no opinion about the relationship of Holloway's CTS to his compensable injury, and McLeod merely quoted Dr. Tucker's opinion on the issue.

old injury. Whether the Commission simply chose to rely on the earlier Hixson statement over her clear opinions given in 1994 is further confused by its adoption of the administrative law judge's opinion, which mistakenly states that Holloway failed to seek medical attention after his visit to Dr. Hixson on May 22, 1992, until he returned to her office on October 7, 1993. Ray White concedes Hixson saw Holloway on at least four (our review reveals at least seven) separate visits during that time period.

█ As stated above, the Commission was not required to believe the testimony of the claimant or any other witness; it may accept and translate into findings of fact only those portions of testimony it deems worthy of belief. However, in the present case, the Commission erred in its translation and the error involved relevant medical evidence which the Commission expressly relied on in reaching its decision. In short, because of the Commission's errors in making its findings, an appellate court is left to speculate concerning what evidence the Commission intended to rely on when making its decision.

█ █ In conclusion, we note that our standards in the review of workers' compensation cases remain the same. Here, like in the *McCoy* case, conflicting medical opinions have been given by competent physicians, and it became the duty of the Commission to weigh and resolve the evidence. Once the Commission does so, its resolution will be given the force and effect of a jury verdict. *Williams*, 336 Ark. at 513. The error in issue here is not that substantial evidence was not presented or considered in this case; instead, the reversible error is found in the Commission's failing to make a proper *de novo* review of the record. That failure resulted in the making of erroneous factual findings that patently fail to support its decision.

For the reasons above, we reverse and remand.