Kevin TUCKER *v.* ROBERTS-MCNUTT, INC.

00-221 29 S.W.3d 706

Supreme Court of Arkansas
Opinion delivered November 2, 2000

*Christopher D. Anderson,* for appellant.

*Friday, Eldredge & Clark:* by: *Betty J. Demory,* for appellee.

ANNABELLE CLINTON IMBER Justice. ■ Appellant Kevin Tucker appeals an adverse decision of the Arkansas Workers' Compensation Commission. This case is before us on petition for review from the Arkansas Court of Appeals; therefore, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Fowler v. State,* 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State,* 331 Ark. 7, 959 S.W.2d 32 (1998).

On June 17, 1997, Mr. Tucker filed a claim with the Arkansas Workers' Compensation Commission alleging that he sustained a compensable injury on May 23, 1997, while he was in the employ of appellee, Roberts-McNutt. Specifically, he alleged that he is entitled to medical benefits and permanent disability benefits based upon an impairment rating of 8% to the body as a whole, as well as temporary total disability benefits for the period beginning July 8, 1997, and ending July 31, 1997. Roberts-McNutt controverted Mr. Tucker's claim in its entirety, arguing that Mr. Tucker failed to make a timely report of a work-related injury, that he did not sustain an injury in the course and scope of his employment, and that, even if Mr. Tucker did sustain a compensable injury, Roberts-McNutt would be entitled to an offset for the amount of any unemployment benefits Mr. Tucker drew between July 8, 1997, and July 31, 1997.

A hearing took place on March 13, 1998, before an administrative law judge. In an opinion filed on May 20, 1998, the law judge held that Mr. Tucker sustained a compensable injury, that he was entitled to all of the benefits sought, and that Roberts-McNutt was entitled to an offset for unemployment benefits drawn by Mr. Tucker during the period July 8 through July 31, 1997. Roberts-McNutt appealed the law judge's decision to the full Workers' Compensation Commission. In an opinion filed on March 23, 1999, the Commission reversed the law judge's decision and held that Mr. Tucker was not entitled to compensation because he failed to prove by a preponderance of the evidence that he sustained a compensable injury on May 23, 1997. Mr. Tucker appealed the Commission's decision to the Arkansas Court of Appeals. In *Tucker*

*v. Roberts-McNutt,* 69 Ark. App. 150, 12 S.W.3d 640 (2000), the court of appeals reversed the Commission's decision and remanded the case for the award of benefits, holding that the Commission's opinion "did not display a substantial basis for denying Mr. Tucker's claim."

Roberts-McNutt petitioned this court to review the decision of the court of appeals. In its petition, Roberts-McNutt argues that the court of appeals went beyond the substantial-evidence standard of review and engaged in the assessment of the credibility of witnesses. We conclude that the Commission expressly relied upon erroneous factual findings in reaching its decision. Accordingly, we must reverse its decision and remand to the Commission for its full examination of the relevant evidence presented in this cause.

The evidence presented to the Commission consisted of the testimony of Mr. Tucker and two of his supervisors, Mr. Wayne Lavender and Mr. Tom Bordeaux, Mr. Tucker's medical records, the deposition testimony of Dr. Scott Schlesinger, and a safety incentive form signed by Mr. Tucker. The parties stipulated that an employer/employee relationship existed and that, if the injury was deemed compensable, Mr. Tucker would be entitled to the maximum rate of compensation.

Roberts-McNutt is a construction company specializing in waterproofing and roofing. On May 23, 1997, Mr. Tucker was employed by Roberts-McNutt as a job foreman and was working on the restoration of the Argenta Depot. According to Mr. Tucker's testimony, he first injured his back in September 1996 when he was lifting 300 feet of water hose from the bed of his pickup. Roberts-McNutt provided treatment for him at the Little Rock Medical Clinic. Mr. Tucker again sought treatment for his back on March 4, 1997, from Dr. David Bryant, a chiropractor. He presented to Dr. Bryant with complaints of lower back pain originating at L4–L5 and L5–S1 and radiating down his leg. Mr. Tucker remained under the care of Dr. Bryant through May 19, 1997. Mr. Tucker did not claim compensation for the treatment with Dr. Bryant, although he attributed his condition to the September 1996 injury.

Mr. Tucker testified concerning his present claim for compensation that, at approximately 11:00 a.m. on May 23, 1997, he was standing on the top of three sections of scaffolding, pulling another

section of scaffolding up with a rope, when the section he was pulling became caught on another section. After he pulled the rope again, Mr. Tucker testified that he "pulled [his] back out." He immediately told the man below him to get out of the way because he was going to drop the scaffolding and come down. Mr. Tucker testified that he continued working on the ground until lunch time, a period of approximately twenty minutes. Although Mr. Tucker testified that two other employees, Mr. Mike Mitchell and Mr. Fred Ready, witnessed this incident and could verify his account of the injury, neither witness testified at the hearing.

According to Mr. Tucker, he informed his supervisor Wayne Lavender at lunch time on May 23, 1997, that "I tore up my back pulling the scaffolding" and that "I am going to the clinic." Mr. Tucker then left the job site and went to the Little Rock Medical Clinic, which he believed to be the clinic used by Roberts-McNutt for work-related injuries, where he was treated by Dr. Thomas Jackson.

Dr. Jackson's office notes indicate that Mr. Tucker complained of bilateral recurrent back pain. According to the Arkansas Workers' Compensation Commission's Physician's Report completed by Dr. Jackson on May 23, 1997, Mr. Tucker informed Dr. Jackson that he was injured while "pulling up scaffold from three sections high." The Physician's Report reveals a diagnosis of bilateral recurrent lumbar/sacral strain and shows that Dr. Jackson treated Mr. Tucker with an injection and medication. Dr. Jackson released Mr. Tucker to return to work with restrictions. Mr. Tucker testified that he returned to the job site that day, but found it deserted. Because the following Monday was the Memorial Day holiday, he did not return to work until Tuesday, May 27. He worked full time, but under the restrictions imposed by Dr. Jackson, until June 11, 1997, when he was fired by Roberts-McNutt for lack of production.

Mr. Tucker continued to seek treatment for his back from Dr. Jackson and from Dr. Bryant. On June 23, 1997, Mr. Tucker also sought the treatment of a neurosurgeon, Dr. Scott Schlesinger, upon the recommendation of Dr. Bryant. In a letter dated June 23, 1997, Dr. Schlesinger noted that Mr. Tucker first injured his back in September 1996, but that "[o]n May 23, 1997, he injured his back again and is now suffering back and left leg pain. He gets occasional pain in the right leg." A July 7, 1997 MRI ordered by Dr. Schles-

inger revealed disc degeneration at L5–S1 and a herniation at L4–L5 for which Dr. Schlesinger ordered immediate surgery. In a letter dated that same day, Dr. Schlesinger reported these findings to Dr. Bryant stating that "the disc herniation at L4–5 is clearly an acute process and almost certainly caused from the accident on May 23, 1997." Dr. Schlesinger performed surgery to repair the herniated disc on July 8, 1997. In his operative report, he again notes that Mr. Tucker's back and lower extremity pain "began after an accident at work on May 23, 1997." Dr. Schlesinger released Mr. Tucker to return to work with restrictions on July 31, 1997.

In deposition testimony, Dr. Schlesinger testified he was informed by Mr. Tucker that he had injured his back on May 23, 1997. Dr. Schlesinger stated that the nature of the disc herniation, which was "probably one of the largest I have seen" led him to believe that it did happen in the precipitous manner described by Mr. Tucker. Although Dr. Schlesinger acknowledged that Mr. Tucker had been suffering from back problems since September of 1996, he testified that the previous injury likely precipitated the more acute injury which occurred in May, stating "[i]t is very rare to see somebody that has a herniated disc that has never had any [back problems]."

Mr. Tucker's supervisor, Wayne Lavender, testified that on May 23, 1997, he did indeed have a conversation with Mr. Tucker around lunch time. At that time, Mr. Tucker told Mr. Lavender that he was going to take off and go to the doctor. But, according to Mr. Lavender, Mr. Tucker did not tell him that he had injured his back while working or that he had injured it by pulling up scaffolding. Mr. Lavender testified he first learned that Mr. Tucker was claiming a work–related injury two weeks later when he was informed by the office secretary that Mr. Tucker had filed a claim. If he had known Mr. Tucker was injured on the job, Mr. Lavender testified that he would have filled out paperwork and escorted Mr. Tucker to the doctor's office personally.

Tom Bordeaux, a general superintendent and safety director at Roberts–McNutt, also testified that Mr. Tucker failed to report a work–related injury. Mr. Bordeaux testified that, as safety director for Roberts–McNutt, he conducted safety meetings for the employees. He had noticed Mr. Tucker in attendance at these safety meetings where Mr. Bordeaux discussed the proper procedure for

reporting an injury on the job: an injured employee was supposed to report the injury immediately to a supervisor, who would then escort the injured employee to the office or to Columbia Doctor's Hospital.

Mr. Bordeaux also testified that Roberts-McNutt supplies time sheets to employees each day which provide space to report any injuries that occur on the job. According to Mr. Bordeaux, he reviews all time sheets and Mr. Tucker did not claim a work-related injury on his time sheet for May 23, 1997. Furthermore, Mr. Bordeaux identified a form labeled "Safety Incentive Program, May 12th-May 25th" that states: "I have worked the past week without an occupational injury or illness." This form was signed by Kevin Tucker and dated May 29, 1997. Mr. Tucker acknowledged that he signed the form, but claimed that he signed it as a matter of routine and that the form was not accurate.

Finally, Mr. Bordeaux testified that Mr. Tucker did not restrict his work following May 23, 1997, as he claims because the daily time sheets prepared by Mr. Tucker as foreman on the Argenta job indicate that he moved and repositioned scaffolding on May 29, 1997. According to Mr. Bordeaux, he was unaware that Mr. Tucker claimed to have been injured on the job until two weeks after the alleged injury when the office secretary informed him that Mr. Tucker had filed a workers' compensation claim.

 On appeal, this court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000) *citing Ester v. National Home Ctrs, Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998)). Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Crudup v. Regal Ware, Inc., supra; Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts. *Crudup v. Regal Ware, Inc., supra.* The determination of the weight to be given the evidence and the resolution of any conflicts in the evidence are matters left to the Commission. *Holloway v. Ray White Lumber Co.*, 337 Ark. 524, 990 S.W.2d 526 (1999). The Commis-

sion is not required to believe the testimony of any witness, and may accept and translate into findings of fact only those portions of testimony it deems worthy of belief. *Id.* And yet, if the Commission errs when it translates the evidence, and that error is expressly relied upon in reaching its decision, the reviewing court "is left to speculate concerning what evidence the Commission intended to rely on when making its decision." *Id.* at 529. *See also Meister v. Safety Kleen,* 339 Ark. 91, 3 S.W.3d 320 (1999).

The Commission here determined that Mr. Tucker failed to prove that he sustained an injury as a result of a specific incident, identifiable by time and place of occurrence because it did not find credible his claim that he sustained an injury on May 23, 1997. To be entitled to compensation, Mr. Tucker was required to prove by a preponderance of the evidence that he sustained an injury that is identifiable by time and place of occurrence, arose out of and in the course of his employment, and required medical services. Ark. Code Ann. § 11-9-102(4)(A), -102(E)(i) (Supp. 1999). A compensable injury must be supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (1999). Medical opinions addressing compensability must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16)(B) (Supp. 1999).

The Commission's decision to deny benefits was predicated upon the following findings of fact: (1) Dr. Jackson's office notes indicating that the claimant was suffering from "Recurrent back pain – PT c/o LT bilateral lumbar pain," and failing to mention anything about the claimant lifting scaffolding and injuring his back at work; (2) the fact that the diagnosis of an extremely large disc herniation at the L4-5 level was not made by Dr. Schlesinger until six weeks after the alleged injury; (3) Dr. Schlesinger's testimony that anyone with the injury attributed to Mr. Tucker as of May 23, 1997, would have been unable to perform "construction type work" or climb scaffolding; (4) Mr. Tucker's failure to report a work-related injury on either his time sheet or his safety incentive form; (5) the testimony of Mr. Lavender and Mr. Bordeaux that Mr. Tucker never reported a work-related injury; and (6) the Commission's own finding that "it is unlikely that a person who suffered from a disc herniation the size of the claimant's as the result of an injury on May 23, 1997, would have been able to work for several weeks before having surgery." In conclusion, the Commission stated that "[t]he *only evidence* we have supporting the claimant's

contention that he sustained a compensable injury is the claimant's testimony that there was an incident on May 23, 1997," and the Commission specifically found "the claimant not to be a credible witness." (Emphasis added).

As stated above, the Commission was not required to believe the testimony of the claimant or any other witness; it may accept and translate into findings of fact only those portions of testimony it deems worthy of belief. *Holloway v. Ray White Lumber Co., supra.* However, in the present case, the Commission erred in translating the evidence presented into findings of fact.

■ First, contrary to the finding of the Commission, the testimony of Mr. Tucker was not the *only evidence* presented supporting his contention that there was an incident on May 23, 1997. Mr. Tucker testified that he informed Mr. Lavender only minutes after the accident that he had "tore up [his] back pulling the scaffolding" and was going to the doctor. Mr. Lavender's own testimony corroborates Mr. Tucker's testimony as to the nature and time of the conversation between them on May 23, 1997. The testimony differs only in Mr. Lavender's denial that Mr. Tucker told him that the back injury occurred while working on the scaffolding. The medical evidence presented by both parties also corroborates Mr. Tucker's testimony, demonstrating that Mr. Tucker consistently informed his treating physicians that the cause of his injury was a work-related accident occurring on May 23, 1997. Office records from the Little Rock Medical Clinic demonstrate that Mr. Tucker went directly to the clinic after leaving the job site, arriving shortly before noon on May 23, 1997. On that date, Mr. Tucker complained of and was treated for bilateral lumbar back pain, and he informed Dr. Jackson, his treating physician, that the cause of the injury was "pulling up scaffold from three sections high." Letters and reports prepared by Dr. Schlesinger, the neurosurgeon who performed Mr. Tucker's back surgery, repeatedly indicate that the cause of Mr. Tucker's injury was an accident that occurred on May 23, 1997. In deposition testimony, Dr. Schlesinger testified that the nature of Mr. Tucker's herniated disc led him to believe that the injury occurred in the precipitous type of manner described to him by Mr. Tucker. Thus, it is clear that Mr. Tucker's testimony is not the *only evidence* in the record supporting his contention that he sustained a back injury on May 23, 1997. We therefore conclude that the Commission erred in finding otherwise.

■ In addition to the foregoing, the Commission also erred in its translation of the evidence when it found that Dr. Jackson, who treated Mr. Tucker for back pain on May 23, 1997, "fail[ed] to mention anything about the claimant lifting scaffolding and injuring his back at work." Contrary to this finding, Dr. Jackson did note in his physician's report to the Commission dated May 23, 1997, that Mr. Tucker gave the following description of the accident: "pulling up scaffold from three sections high."

■ Finally, the Commission erred when it found that if Mr. Tucker had been injured as he claimed on May 23, 1997; it is unlikely that he would have been able to work for several weeks before having surgery. This finding is in error because there is no evidence in the record that Mr. Tucker worked for several weeks after May 23, 1997, before undergoing surgery. According to the uncontradicted evidence, Mr. Tucker was fired by Roberts-McNutt on June 11, 1997, for lack of production. At most, Mr. Tucker worked only twelve days following the alleged injury.

■ As in *Holloway v. Ray White Lumber Co., supra*, the error in issue here is not that substantial evidence was not presented or considered in this case; instead, the reversible error is found in the Commission's failing to make a proper *de novo* review of the record. That failure resulted in the making of erroneous factual findings upon which the Commission expressly relied in reaching its decision to deny compensation. We are left to speculate concerning what evidence the Commission intended to rely on when making its decision. *Meister v. Safety Kleen supra*; *Holloway v. Ray White Lumber Co. supra*. The Commission's erroneous factual findings require our reversal of its decision. We remand this case to the Commission for its full examination of the relevant evidence presented in this cause.

Reversed and remanded.