Stephen GOODWIN *v.* PHILLIPS PETROLEUM COMPANY

CA 00-578                                           37 S.W.3d 644

Court of Appeals of Arkansas
Division I
Opinion delivered January 24, 2001

*Mary Thomason*, for appellant.

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Stephen Goodwin, appeals from a decision of the Workers' Compensation Commission. For reversal, he argues that the Commission erroneously denied him temporary total disability benefits from 1993 to 1998, permanent total disability benefits, and an attorney fee. We conclude that appellant's first argument was not preserved for appel-

late review. Further, we affirm the Commission's decision regarding its denial of total disability benefits. However, we reverse its denial of an attorney fee.

The parties stipulated before the administrative law judge (ALJ) that appellant suffered compensable back injuries on January 24, 1991, and February 3, 1991, and stipulated that appellee paid temporary total disability benefits from September 4, 1992, through February 11, 1998. The parties agreed to litigate appellant's entitlement to vocational rehabilitation benefits, permanent disability benefits, and an attorney fee.

Before the ALJ, appellant argued that he was permanently and totally disabled as a result of his compensable injury or, alternatively, that his percentage of permanent disability exceeded his ten-percent impairment rating. In either event, he claimed that he was entitled to rehabilitation benefits and, in addition, that because his claim for permanent disability benefits was controverted, he was entitled to an attorney fee. On the other hand, appellee contended that appellant was neither permanently and totally disabled as a result of his compensable injuries nor entitled to permanent disability benefits in excess of his ten-percent impairment rating. Appellee acknowledged that appellant underwent a laminectomy on October 8, 1992, but contended that he reached the end of his healing period for his compensable injury on June 10, 1993. However, appellee inadvertently continued to pay temporary total disability benefits until February 11, 1998. Appellee sought reimbursement from appellant for the overpayment of temporary total disability benefits or, alternatively, credit against any future benefits awarded.

The ALJ concluded that appellant failed to prove entitlement to vocational rehabilitation benefits. However, he found that appellant suffered a ten-percent permanent impairment rating to the body as a whole and, in addition, suffered a fifteen-percent wage loss disability. The ALJ also concluded that appellant reached the end of his healing period on June 10, 1993, but determined that it would be unconscionable to require reimbursement for the overpayment of temporary total disability benefits. Nevertheless, the ALJ found that appellee was entitled to a credit for the overpayment of temporary total disability benefits against the award of permanent disability benefits. Finally, the ALJ noted that appellee had paid no disability benefits since February 11, 1998. The ALJ concluded that although appellee did not contest its responsibility for appel-

lant's ten-percent anatomical impairment, appellee failed to pay in accordance with the rating, and this constituted a controversion of permanent disability benefits entitling appellant to an attorney fee based on the award of permanent disability benefits.

Both parties sought a review of the ALJ's decision by the Commission. Appellant appealed the ALJ's denial of his claim that he was permanently and totally disabled and entitled to permanent and total disability benefits. Appellee appealed the award of an attorney fee. The Commission affirmed the ALJ's decision that appellant was not permanently and totally disabled, but reversed the award of an attorney fee based on the award of permanent partial disability.

■ On appeal, this court will affirm when the Commission's decision is supported by substantial evidence. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 517, 29 S.W.3d 706, 709 (2000). "Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief." *Id.* "A substantial basis exists if a fair-minded person could reach the same conclusion when considering the same facts." *Id.*

■ For his first issue on appeal, appellant argues that the Commission erred in allowing appellee a credit for the overpayment of temporary total benefits after June 10, 1993. While the ALJ ruled on this issue, the argument was not presented to the Commission. Thus, the Commission did not address this issue. "It was the appellant's responsibility to obtain a ruling on this issue by the Commission," and "[a] question not passed upon below presents no question for decision here." *See W.W.C. Bingo v. Zwierzynski*, 53 Ark. App. 288, 294, 921 S.W.2d 954, 958 (1996). Consequently, this issue was not preserved for appellate review.

For his second issue, appellant contends that the Commission erred in failing to find him totally and permanently disabled under the odd-lot doctrine. Appellant notes that he has no vocational training and "has had a series of maladies since the injury." Appellant states that his work capabilities are severely limited and must include only sedentary, light work. In finding that appellant did not fall under the odd-lot doctrine, the Commission found that appellant "is not entitled to permanent and total disability benefits arising out of his workers' compensation injury, because he is not

totally incapacitated from working due to his injury and because the other problems he has were not the result of his treatment for the compensable injury."

■ The odd-lot doctrine was abolished by Act 796 of 1993, codified at Ark. Code Ann. § 11-9-522(e) (Supp. 1999). However, because appellant's injuries occurred prior to 1993, the doctrine is applicable to his case. *See Ellison v. Therma Tru*, 71 Ark. App. 410, 418, 30 S.W.3d 769, 774 (2000). "The odd-lot doctrine provides benefits for an employee who is injured to the extent that he can only perform services that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist and he may be classified as totally disabled." *Id.* A claimant must make a *prima facie* showing of being in the odd-lot category based upon the factors of permanent impairment, age, mental capacity, education, and training. If the claimant makes such a showing, the employer then has the burden of showing that some kind of suitable work is regularly and continuously available to him. *Id.*

We note the following history. Appellant was born February 5, 1965, so he celebrated his twenty-sixth birthday on the day of his second back injury. During his deposition, Dr. Ronald Williams testified that he first treated appellant in April of 1992 and then performed a laminectomy and discectomy on appellant in October of 1992. Further, Williams opined that in June of 1993, appellant reached his maximum medical improvement. Williams assessed appellant's permanent impairment rating at ten-percent to the body as a whole. He continued to see appellant periodically from 1993 until July 7, 1998, and opined that after 1993 appellant's condition remained stable. Doctor Richard Davis, a family practitioner who saw appellant for various maladies from the date of injury until May 1998, testified that appellant came to see him in January of 1993 with stomach pains. He noted that appellant had problems with reflux, recurrent weight loss, and anorexia. Davis opined that some of the reflux problem could have been aggravated by medications he was taking for his back. Further, although unrelated to his back condition, Davis noted that appellant recently had problems with partial kidney failure and high calcium levels and was diagnosed with a condition called sarcoidosis.[1]

---

[1] A chronic disease of unknown cause that is characterized by the formation of nodules resembling true tubercles, especially in the lymph nodes, lungs, bones, and skin. WEBSTER'S NEW COMPLETE MEDICAL DICTIONARY 614-15 (1996).

Davis noted that he had opined in a letter dated July 16, 1993, that appellant was unable to return to his prior occupation, but could return to work so long as the work fit within the restrictions that had been outlined in a functional capacity assessment of May, 1993. Appellant had functional capacity assessments in 1993 and 1996. The functional capacity assessment in 1993 provided that appellant was capable of medium-duty work, which enabled him to perform just over ninety-percent of all jobs. The 1996 assessment established that appellant could perform jobs requiring light physical demands, which enabled him to perform six out of ten available jobs. Davis also stated that the condition of appellant's back had remained unchanged since June of 1993.

██ The odd-lot doctrine provides benefits for an employee who is injured to the extent that he can only perform services that are so limited that he may be classified as totally disabled. This standard implies a causation element that requires that the injury and not some subsequent and unrelated condition caused the claimant's inability to perform services. At the time appellant reached his maximum medical improvement, he was a twenty-eight-year-old high school graduate who could, according to the functional capacity assessment, perform, at a minimum, six out of every ten available jobs on the market. Given this evidence, appellant was not totally and permanently disabled under the odd-lot doctrine.

Our conclusion that the odd-lot doctrine implies causation is buttressed by the following general observations. At the time of appellant's compensable back injuries, the Commission took into account "such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity." Ark. Code Ann. § 11-9-522(b) (1987). "Disability" was defined as an "incapacity because of injury to earn, in the same or any employment, the wages which the employee was receiving at the time of the injury." Ark. Code Ann. § 11-9-102(5) (1987). "Injury" was defined as an "accidental injury arising out of and in the course of employment ...." Ark. Code Ann. § 11-9-102(4) (1987). Under this statutory rubric, it was anticipated that a claimant could receive partial disability benefits in excess of the employee's percentage of permanent physical impairment so long as the disability was caused by an injury arising out of and in the course of employment. Under a similar analysis, the New Mexico Court of Appeals concluded that given the legislature's limitation of an employer's liability by requiring proof of causation, it was

improper to include a claimant's unrelated post-injury disease in determining disability because it would eliminate the requirement of causation. *See Clavery v. Zia, Co.*, 104 N.M. 321, 720 P.2d 1262 (N.M. Ct. App. 1986)(involving a compensable injury to the claimant's back and a subsequent diagnosis of breast cancer).

■ Here, the only evidence even suggesting a causal connection between appellant's current problems and his compensable back injury was testimony that his reflux could have been aggravated by some of the medications that he was taking for his back. The Commission, however, concluded that the medical evidence was insufficient to establish that his gastrointestinal problems were caused by the treatment for his back injury or that his gastrointestinal problems caused his incapacity to earn wages. Determination of the existence of a causal connection is a question of fact for the Commission. *Carter v. Flintrol, Inc.*, 19 Ark. App. 317, 720 S.W.2d 337 (1986). While appellant was also diagnosed with partial kidney failure and high calcium levels and was diagnosed with sarcoidosis, Dr. Davis testified that those conditions were unrelated to his back injury.

■ It is antithetical to the structure of the workers' compensation statutes as they existed in 1993 to award compensation when appellant's current disability is the result of an unrelated post-injury condition and not in some manner caused by his compensable injury. *See also* 82 Am. Jur. 2d. *Workers' Compensation* § 381 (1992)("[A]n employee partially incapacitated by reason of a compensable injury is not entitled to collect for total incapacity because of an intervening unrelated injury."). Were it otherwise, we would be faced with the prospect of awarding total and permanent disability benefits even though the reasons for the disability were unrelated to and occurred long after appellant's compensable injury.

Thirdly, appellant argues that the Commission erred by denying him an attorney fee based on the award of a ten-percent physical impairment rating. We disagree with the Commission's analysis. "[W]henever the [C]ommission finds that a claim has been controverted, in whole or in part, the [C]ommission shall direct that fees for legal services be paid to the attorney for the claimant," and "[t]he fees shall be allowed only on the amount of compensation controverted and awarded." Ark. Code Ann. § 11-9-715(a)(2)(B) (Repl. 1996). As noted in *Cleek v. Great S. Metals*, 335 Ark. 342, 345, 981 S.W.2d 529, 531 (1998), "[i]f the fundamental purposes of

attorney's fees statutes such as § 11-9-715 are to be achieved, it must be considered that their real object is to place the burden of litigation expenses upon the party which made it necessary."

 The Commission concluded that appellee, by prevailing on its request for a credit, was justified in not paying appellant an attorney fee on appellant's ten-percent permanent impairment rating because the credit exceeded its liability for payment of benefits. However, the granting of a credit does not diminish the fact that appellee controverted and did not pay permanent disability benefits. Thus, appellant was required to employ counsel. *See Cleek, supra.* We reverse for an award of an attorney fee.

Affirmed in part; reversed and remanded in part.

BIRD and GRIFFEN, JJ., agree.

