# Sheila HILL v. BAPTIST MEDICAL CENTER

CA 00-1177 48 S.W.3d 544

Court of Appeals of Arkansas
Division III
Opinion delivered June 20, 2001
[Substituted opinion upon grant of rehearing
delivered October 10, 2001]

M. *Keith Wren*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Gail Ponder Gaines* and *Wendy S. Wood*, for appellee.

JOHN B. ROBBINS, Judge. In our original opinion in this appeal, *Hill v. Baptist Medical Center*, 74 Ark. App. 250, 48 S.W.3d 544 (2001), we reversed the Workers' Compensation Commission's decision that held that appellant's laminectomy surgery was not reasonable and necessary treatment for her compensable injury; that appellee had failed to raise before the Commission the issue of whether the surgeon who performed this surgery, Dr. Fox, was an authorized physician; and remanded the case to the Commission for further proceedings, including a determination of whether appellant was entitled to additional temporary total disability benefits. Appellee timely filed a petition for rehearing. We have granted this petition. In this substituted opinion we direct the Commission on remand to also determine whether services rendered by Dr. Fox constituted authorized treatment.

Appellant Sheila Hill appeals the denial of workers' compensation benefits by the Workers' Compensation Commission in her claim against her employer, appellee Baptist Medical Center. Appellant raises two points on appeal: (1) that the Commission erred as a matter of law by refusing to consider appellant's post-surgical improvement when determining whether surgery was reasonable and necessary; and (2) that the Commission's denial of further benefits is not supported by substantial evidence. We reverse and remand because the finding that surgery was not reasonable and necessary is not supported by substantial evidence, and we remand to the Commission to make a finding as to which party bears the cost of this treatment.

The standard of review for appeals from the Workers' Compensation Commission is well-settled. On appeal, this court will view the evidence in the light most favorable to the Commission's decision and affirm when that decision is supported by substantial evidence. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts. *Id.* The issue is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if

reasonable minds could reach the Commission's conclusion, then we must affirm. *Green Bay Packing v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 692 (1999). The Commission is not required to believe the testimony of any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Holloway v. Ray White Lumber Co.*, 337 Ark. 524, 990 S.W.2d 526 (1999). The Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Green Bay Packing v. Bartlett, supra*. The Commission has the duty to use its expertise in translating evidence of medical experts into findings of fact. *Id.* However, these standards must not totally insulate the Commission from judicial review because this would render this court's function meaningless in workers' compensation cases. *Inskeep v. Emerson Elec. Co.*, 64 Ark. App. 101, 983 S.W.2d 132 (1998).

On February 4, 1999, appellant suffered an admittedly compensable back injury, a herniation at L4-5, while at work for appellee in her capacity as a certified nurse's assistant as she escorted a psychiatric patient to his room. She sought medical treatment in the emergency room of her employer the following day, and she received a Toradol injection to relieve the discomfort she felt in her low back and radiating down her left leg. She returned to the emergency room three days later complaining of pain radiating down her lower left thigh. Appellant next presented to Dr. Barg, her family doctor, on February 11, who treated her conservatively and referred her to physical therapy. Dr. Barg ordered an MRI, but the workers' compensation insurance carrier would not approve this diagnostic test because Dr. Barg was not an approved provider.

The insurance carrier referred appellant to a neurosurgeon, Dr. Russell, who noted in his report of March 19 the lack of improvement in her symptoms. Dr. Russell opined that her symptoms and history were consistent with nerve root irritation, which is typically secondary to a ruptured disc. He ordered an MRI, and this test revealed the presence of a herniated disc at L4-5 that was compromising the nerve root at the left L4. In Dr. Russell's clinic note dated April 7, he stated that her pain had actually worsened somewhat and she continued to have quite a bit of pain behavior while sitting for the examination. Dr. Russell explained that the symptoms she expressed on April 7 did not match the expected distribution as shown by the MRI, but that, even so, not one of his patients in the last five years who was a workers' compensation claimant got any better after surgical intervention. Dr. Russell stated that even the patients he had seen who were "perfectly suited for surgical intervention do not seem to have a significant improvement." Dr.

Russell opined that she was better suited for pain management, and that if this course was unsuccessful, then she would need an impairment rating and release from treatment. Dr. Russell referred her for further conservative treatment under the care of Dr. Meador.

Appellant saw Dr. Meador of Arkansas Pain Centers, Ltd., on April 15, whose evaluation of appellant indicated a sacroiliac strain; Dr. Meador made no mention of herniation. She prescribed an injection at the pain site and physical therapy. Throughout the course of physical therapy, which consisted of approximately six sessions, appellant complained of low back and lower extremity pain. However, there were notes of improvement in her condition during the course of physical therapy. In Dr. Meador's progress note dated May 13, she stated that the strain had improved with the injection and physical therapy and that a work–conditioning program would be implemented. A physical therapist's progress report dated June 2 noted that appellant cried throughout her session, though the therapist could not find a sacral or lumbar problem. The therapist requested that Dr. Meador advise her how to proceed with the patient.

Appellant presented on June 3 to Dr. Meador, who stated that by her physical examination the sacroiliac strain had resolved. At that time, Dr. Meador released appellant to work with restrictions, but such work was unavailable, so appellant stayed off work. Dr. Meador anticipated that appellant would be released to work full duty in two months. No further medical care was administered, nor would the carrier authorize any upon written request because there were "no objective findings" and "Ms. Hill is seeking treatment for pain," per a letter from the carrier dated July 16.

On August 2, Dr. Meador recommended that appellant begin water aerobics for her general fitness and, as the doctor had earlier indicated, she released appellant to work without restrictions. Dr. Meador also remarked on that date that appellant exhibited exaggerated pain behavior.

Appellant maintained that she could not work due to pain. She presented to the UAMS emergency room on September 15 and was referred to a UAMS neurosurgeon and professor of neurosurgery, Dr. Fox. Dr. Fox recommended that she undergo a laminectomy, and appellant wanted to proceed as soon as possible. Dr. Fox explained to appellant the risks of the surgery, including death, paralysis, hemorrhage, infection, failure of pain relief, and spinal fluid leak. Appellant decided to undergo surgery, which was performed on September 17, 1999. In his surgical report, Dr. Fox

noted that the disc at L4-5 was obviously bulging and impinging both nerve roots per his visual exam of her spine during surgery. In a follow-up examination on November 10, Dr. Fox noted that appellant's leg pain was absent on that date and that he expected gradual but continued improvement in her back pain. In a December 1 letter in response to appellant's counsel, Dr. Fox expressed disagreement with Dr. Russell's opinion that appellant was not a surgical candidate to treat her herniation. Dr. Fox noted moderate back pain after surgery that required pain medication and the potential of physical therapy as she healed from the laminectomy.

Appellant requested a hearing to consider her claim for additional temporary total disability, additional medical treatment, and attorney's fees. Appellee contended that appellant's healing period ended on August 3 and that no treatment was reasonable or necessary after that date nor was any temporary total disability warranted after that date. The hearing was conducted on December 14, in which appellant testified that her back and leg pain was much improved after surgery and that she no longer suffered any falling incidents due to weakness in her leg as she had prior to surgery.

On this evidence, the Administrative Law Judge (ALJ) found that the physicians' opinions were, at best, equal evidence of whether the surgery was reasonable and necessary, and that because appellant had the burden of proving by a preponderance of the evidence that this was reasonable and necessary treatment, she had failed to do so. The ALJ further found that appellant failed to prove that she was still in her healing period subsequent to her release by Dr. Meador.

A motion to reconsider and a notice of appeal were lodged with the Commission. The motion to reconsider asked that the ALJ be ordered to reconsider the claim in light of appellant's post-surgical improvement as a relevant consideration in determining whether the surgery was reasonable and necessary, citing to *Winslow v. D & B Mech. Contractors*, 69 Ark. App. 285, 13 S.W.3d 180 (2000), a case handed down by our court subsequent to the hearing. Appellant's counsel asserted that there was new evidence to consider in that she had been able to return to work since the hearing, further supporting the validity of the surgery. The Commission issued an order denying the motion for reconsideration. It subsequently rendered a majority opinion affirming and adopting the opinion of the ALJ. It is from this order that appellant lodged the instant appeal.

 Arkansas Code Annotated section 11-9-508 (Repl. 1996) states that employers must provide all medical treatment that is reasonably necessary for the treatment of a compensable injury. What constitutes reasonable and necessary treatment under this statute is a question of fact for the Commission. *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996); *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). We reverse because the finding that surgery was not reasonable and necessary treatment is not supported by substantial evidence.

We disagree with the finding that Drs. Fox and Russell had opinions that were, at best, even, as characterized by the ALJ. Dr. Russell specifically recognized the herniation as depicted on the MRI that he ordered and initially noted that appellant's symptoms were consistent with a herniation. He simply did not advocate surgical intervention. Then, Dr. Meador failed to recognize that appellant was referred to her for treatment of a herniation; Dr. Meador diagnosed appellant with a sacroiliac strain, treated her accordingly, and released her on schedule. Appellant presented to the emergency room when no further medical care was authorized, resulting in a referral to a professor of neurosurgery at UAMS, whose recommended surgery provided relief from her ongoing symptoms, and whose visual exam revealed more extensive nerve root compression than did the MRI.

 Moreover, the Commission failed to make any comment about the uncontroverted evidence that appellant's symptoms significantly improved post-surgery. This is a relevant consideration when deciding whether treatment is reasonable and necessary. *See Winslow, supra.* While the Commission is empowered with the authority to weigh medical evidence and to examine the basis of an expert's opinion in deciding what weight to give it, it may not arbitrarily disregard the testimony of any witness. *See Crow v. Weyerhaeuser Co.*, 46 Ark. App. 295, 880 S.W.2d 320 (1994). It appears to have done just that by disregarding the substantial improvement enjoyed by appellant post-surgery. In sum, there is no substantial evidence that surgery was not reasonably necessary in this instance. We do not believe that fair-minded persons with the same facts before them could have reached the conclusion rendered by the Commission. *See Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001). Inasmuch as her entitlement to additional temporary total disability benefits is dependent upon the resolution of facts not before us, we remand for proceedings consistent with our opinion on this issue.

Alternatively, appellee contends that appellant was not entitled to benefits for any medical care provided after she presented to the UAMS emergency room, even if it was reasonable and necessary, because she did not follow the procedures required to change physicians. We cannot, however, resolve this issue because the Commission failed to render a ruling on this issue, nor was it necessary, when it determined that the care provided by UAMS and Dr. Fox was not reasonable or necessary. Because we have held otherwise, this issue has become relevant to the responsibility for payment of medical services that were rendered. Consequently, it will be necessary for the Commission to find facts on this issue to determine whether appellant acted improvidently by failing to adhere to the change of physician rules or whether appellant acted appropriately by seeking care through the UAMS emergency room after her request for further treatment was denied. The Commission is not an appellate court but a fact-finding body. *See Cagle Fabricating & Steel, Inc. v. Patterson*, 309 Ark. 365, 830 S.W.2d 857 (1992). In carrying out its duty to find the facts, the Commission is required to make findings of fact, and those findings must contain all of the specific facts relevant to the contested issue or issues so that the reviewing court may determine whether the Commission has resolved these issues in conformity with the law. *Id; see also Lunsford v. Rich Mountain Elec. Co-op*, 33 Ark. App. 66, 800 S.W.2d 732 (1990); *Wright v. Amer. Transp.*, 18 Ark. App. 18, 709 S.W.2d 107 (1986).

Reversed in part and remanded for proceedings consistent with this substituted opinion upon grant of rehearing.

STROUD, C.J., JENNINGS, GRIFFEN, and CRABTREE, JJ., agree.

PITTMAN, J., dissents.

JOHN MAUZY PITTMAN, Judge, dissenting. I dissent from the denial of appellee's petition for rehearing. Although the majority opinion states that it is granting rehearing in this case, that is true only in a narrow and technical sense. The relief granted in the majority opinion was requested as a secondary and alternative remedy in the event that we were to deny the primary aspect of appellee's petition for rehearing, namely appellee's contention that our original opinion was erroneous because we improperly substituted our interpretation of medical evidence for that of the Commission, and because we usurped the Commission's function as fact-finder by weighing and giving credence to appellant's subjective statements that her symptoms had improved following the

surgical procedure. By granting the alternative request for relief, the majority is denying the primary request *sub silentio*.

The salient facts are few. Appellant requested surgery. Physicians differed in their predictions of whether surgery would improve her condition. The surgery was performed. Appellant told her surgeon and the Commission that her condition was improved by the surgery and requested that it be paid for by the appellee. The Commission denied the request on the grounds that appellant had failed to prove that the surgery was reasonable and necessary for treatment of her injury; the Commission viewed as evenly balanced, at best, the various physicians' predictions as to whether that surgery would help her. This court reversed, finding that she had been helped by the surgery and that the surgery was reasonable and necessary for treatment of appellant's injury.

Several errors are apparent. The Commission's opinion is flawed because the facts that it relies upon do not support its conclusion. A physician's *prediction* that surgery will not be therapeutic, standing alone, is not a substantial basis for denying relief when there is evidence before the Commission concerning the *actual outcome* of the surgery. In the absence of any discussion of the surgery's outcome, the Commission's findings in this case were insufficient to justify denial of relief, and we should therefore reverse and remand for more explicit findings consistent with *Wright v. American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986); *see also Lowe v. Car Care Marketing*, 53 Ark. App. 100, 919 S.W.2d 520 (1996) (reversed and remanded for specific findings where, while Commission may have determined claimant was not a credible witness, the opinion did not so state).

The Commission committed an error of form: its opinion was too incomplete for us to determine whether it was made in accordance with the law. The majority, however, has committed errors of substance, and it is plain upon the face of its opinion that it has not conformed with the law.

First, the majority erroneously substitutes its interpretation of the conflicting, pre-surgical medical evidence. Our law is clear that the Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Geo Specialty Chemical v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict, *id.*, and this court is powerless to reverse the Commission's

decision regarding which medical evidence that it chooses to accept when that evidence is conflicting. *Whaley v. Hardee's*, 51 Ark. App. 166, 912 S.W.2d 14 (1995).

The majority then rightly concludes that the Commission's opinion does not explain its outcome, and correctly states that post-surgical improvement, or lack thereof, should be considered under *Winslow v. D & B Mechanical Contractors*, 69 Ark. App. 285, 13 S.W.3d 180 (2000). However, rather than remanding for the Commission to consider the evidence of post-surgical improvement, the majority proceeds to make findings of its own to the effect that appellant was, in fact, helped by the surgery. This is clearly in contravention of the law.

The evidence of post-surgical improvement in this case derives ultimately from the appellant herself in the form of her statements to her physician and her testimony before the Commission. The majority has not, and cannot, explain why the Commission must believe this evidence. It is axiomatic that the testimony of an interested party is never considered uncontroverted, but is instead considered to be disputed as a matter of law. *Ester v. National Home Centers, Inc.*, 335 Ark. 356, 981 S. W.2d 91 (1998); *Knoles v. Salazar*, 298 Ark. 281, 766 S.W.2d 613 (1989); *Waterfield v. Quimby*, 277 Ark. 472, 644 S.W.2d 241 (1982); *Lambert v. Gerber Products Co.*, 14 Ark. App. 88, 684 S.W.2d 842 (1985).

The rule that the Commission cannot arbitrarily reject the testimony of a witness has no application here. As stated, to the extent that appellant's surgeon mentioned appellant's post-surgical improvement, his statements were based on appellant's subjective statements to him that her pain had lessened. The assertion by appellant's attorney in his motion for reconsideration that post-surgical pain improvement had allowed appellant to return to work since the hearing is *not evidence*; it is, at most, a proffer in support of his motion and cannot be considered by this court as established fact to corroborate her testimony. Moreover, even if the substance of counsel's assertion were in evidence, it would have to be gauged against the medical evidence that appellant's *pre*-surgical complaints of pain were exaggerated, and that is the Commission's function, not this court's. To hold, as the majority apparently does, that it would have been "arbitrary" for the Commission to reject the uncorroborated, self-serving, controverted, subjective testimony of appellant, the person most interested in the outcome of the case, is patently wrong.

The Commission, then, was free to reject appellant's testimony if it was found to be incredible, and was likewise free to believe this testimony if it found it to be worthy of belief. *See Ringier America v. Combs,* 41 Ark. App. 47, 849 S.W.2d 1 (1993); *Norman v. Norman,* 268 Ark. 842, 596 S.W.2d 361 (Ark. App. 1980). The court of appeals, however, is not free to do either. It is the Commission's duty to make and enter findings of fact and to decide the issues before it by determining whether the party having the burden of proof on an issue has established it by a preponderance of the evidence. *S & S Construction, Inc. v. Coplin,* 65 Ark. App. 251, 986 S.W.2d 132 (1999). Appellate courts are not permitted to review decisions of the Commission *de novo* on the record or make findings of fact on matters that the Commission should have considered but did not. *See id.*

The majority opinion correctly states that the Commission is not an appellate court. It would be well for us to remember that we are not fact-finders.

I respectfully dissent.