FARMERS' & MERCHANTS' BANK OF BEARDEN *v.* STATE USE CALHOUN COUNTY.

Opinion delivered January 27, 1930.

996

998

*Gaughan, Sifford, Godwin & Gaughan*, for appellant.
*Compere & Compere* and *Joe Joiner*, for appellee.

BUTLER, J., (after stating the facts). The appellee, Calhoun County, predicates its right to recovery from the appellant bank on the theory that there was a wrongful conversion by the county treasurer of the funds in his hands belonging to the county, and that the appellant bank, with knowledge of such facts, or knowing facts from which such knowledge could be imputed, when it accepted and appropriated the proceeds of the $2,000 check unlawfully drawn by the county treasurer on the funds of the county in the Calhoun County Bank, became liable jointly with the county treasurer for such wrongful conversion; and that appellee, Goodwin, although he might himself not have known that the check drawn was not the personal check of Easterling, but a check of the county treasurer drawn on county funds, is liable, because the appellant bank, in receiving and collecting the check, was the agent of Goodwin, and its knowledge and acts, being in the line of its duty and within the scope of its authority, became the knowledge and acts of Goodwin himself. The question as to whether the appellant bank knew or should have known that the funds of the county were being unlawfully converted was submitted to the court sitting as a jury, which had before it testimony tending to establish the facts hereinbefore stated. While it was stated by one of the officers of the appellant bank that the abbreviation "Co. Treas.," taken together

with the knowledge of what the check was for, made him think that the abbreviation meant company treasurer, this statement the court had the right to weigh with the surrounding circumstances, and, being the sole judge of the credibility of the witnesses and the weight to be given their testimony, concluded, and had the right to conclude, that the bank, when it received the check in question, knew that it was the check of the county treasurer, and drawn on county funds.

Did this knowledge render the appellant bank liable? The appellant bank insists that, notwithstanding the finding of fact by the court, it is not liable, because, as it says, it "never-has. claimed or held any right, title or interest in or to any part or portion of said funds," and, although the court might have found from the circumstances known to the bank that it should have known that the check was for county funds unlawfully converted, this would not be sufficient to bind it, because it must have had "actual knowledge that Easterling was using county funds to pay his individual obligations, or the obligations of the Calhoun Supply Company." The appellant bank contends that it merely was the agent for the collection of the check, and that, when collected, it held the proceeds in trust for Goodwin. Appellant relies upon the cases of *Second National Bank* v. *Bank of Alma*, 99 Ark. 386, 138 S. W. 472, and *State National Bank* v. *First National Bank*, 124 Ark. 531, 187 S. W. 673, to support this contention.

In the first mentioned case the court said: "The uncontroverted evidence shows that the plaintiff received the draft with the accompanying bill-of-lading from the Judge Machine Company (owner of the draft) for collection only, and did not discount said draft or purchase same. The Judge Machine Company was a depositor with the plaintiff, but the testimony clearly shows that no part of this draft was placed to its credit by the plaintiff, and no part thereof was paid to the Judge Machine Company by it. The plaintiff was not a purchaser of this draft,

and it therefore was not a holder thereof for value. It therefore did not become the purchaser or owner of the machine covered by the bill-of-lading accompanying the draft.''

In the latter case the court found that the bank sought to be bound had never at any time had any interest in the check or title in its proceeds, but received same in the ordinary course of business for collection merely, and held the proceeds in trust solely for the purpose of remitting.

In the instant case, the check in question was drawn payable to the order of the appellant bank itself, and, while it was acting as the agent of Goodwin for the collection, yet, when the proceeds were collected, it appropriated the money and became the owner of same, crediting an equal amount to the time deposit of Mrs. M. H. Goodwin, according to the instructions received by it from Goodwin. Therefore the appellant bank became the owner of the money and indebted to Mrs. Goodwin for a like amount. It will be seen from an examination of the cases cited by the appellant bank, 99 Ark. and 124 Ark., that they are unlike the case at bar, in that the proceeds of the draft and check in those cases were never deposited to the credit of the owners, and in this case they were so deposited, and the check itself was made payable to the order of the appellant bank. As we have seen, the bank was the agent for Goodwin in the collection of the check, yet that relation ceased when the money on the check was received, and the account of Mrs. Goodwin credited with an equal amount. Therefore the relation of creditor and debtor, as between the appellant bank and Mrs. Goodwin, obtained, the bank being the owner of the money, but at the same time owing Mrs. Goodwin therefor. This is the general rule, (3 R. C. L. 634), which has been adopted and approved by this court in a number of decisions, among which are *Southern Sand & Material Co.* v. *Peoples' Savings Bank,* 101 Ark. 266, 142 S. W. 178; *Brown* v. *Yukon National Bank,* 38 Ark. 210; *Guaranty Bank &*

*Trust Co.* v. *Davis,* 170 Ark. 86, 279 S. W. 357; *City of Helena* v. *First National Bank of Helena,* 173 Ark. 197, 292 S. W. 140.

In support of its contention that it did not have actual knowledge of the conversion of county funds by the county treasurer, appellant bank argues that it might reasonably have concluded that the check, although drawn by the county treasurer on funds of the county, was not an unlawful conversion, because the testimony shows that Easterling, in paying himself commissions as treasurer of the county, would do so by checks drawn by himself as such on the county funds, and, for that reason, appellant bank was led to believe that Easterling was legally authorized to execute and deliver the check. This could not have been the belief of appellant bank, because, in the first place, it was shown that the county treasurer had no commission due him during the year 1928, having previously largely overdrawn his account as such; and, second, it knew that the check drawn was not for commissions, but to take the place of two checks of the Calhoun Supply Company, which had previously been dishonored, and that these checks so dishonored were for a debt due Goodwin. While it might be true that the bank would not be required to inquire into the legality of checks drawn by public officers on public funds under circumstances where there could be no reasonable grounds for suspicion that they were being diverted, yet the circumstances of the instant case show that the transaction was not of such character as to make it apparently legitimate on its face. Nothing is better settled than that the existence of a fact may be proved by circumstances as well as by direct testimony, and in this case the circumstances were sufficient to lead to the inference that the appellant bank must have known that the funds of the county were being used for an unauthorized purpose. It knew that the Calhoun Supply Company did its banking business with the Hampton State Bank, and that no checks had ever passed through its hands drawn by the supply company upon the Calhoun County Bank; it also knew that the supply com-

pany was indebted to Goodwin, and in payment of which debt certain post-dated checks had been issued drawn on the Hampton State Bank by the supply company, which had been dishonored, and that the identical check in question was drawn in its favor upon the Calhoun County Bank in payment of the dishonored checks, and that the signature of the check was not such as had been usually signed to the checks of that company, but by the name of a man whom it knew to be the treasurer of the county with the usual *indicia* of his official character. All this leads to the irresistible conclusion that the appellant bank knew, or should have known, all the facts of which it now has knowledge. This being true, liability attaches to the appellant bank by virtue of § 2833 of Crawford & Moses' Digest, act approved April 9, 1891. Section 2 of that act provides that ''It shall be unlawful for any person or persons whomsoever to borrow or receive any public funds of any such officer, deputy clerk or employee, knowing the same to be public funds, and for the purpose of converting or applying the same to his or their own use or benefit, or to the use or benefit of any other person or persons, or of any corporation.'' Such ''officer'' referred to is any State, county, township or city officer mentioned in act 627, Acts of 1923, page 526, amending § 2832, C. & M. Digest.

A number of cases are cited by appellant bank and appellee, Calhoun County, in support of their various contentions, which we do not deem it necessary to review because of the conclusion reached. It is clear that, under the facts and the law, the appellant bank is liable to the county, and that the judgment of the trial court as to it is correct.

Since the lower court found that the appellant bank was in possession of facts sufficient to put it on inquiry, and, as we have seen, the evidence justifies such finding, it follows that the court erred in dismissing the complaint as to M. H. Goodwin, on the ground that he ''had no notice or knowledge of the fact that the public fund was being unlawfully converted by said county treasurer,

and had no information sufficient to put him on inquiry thereof.'' The appellant bank, in accepting the check drawn in its favor by the county treasurer on county funds, and in making the collection from the drawee bank, was acting within the line of its duty and the scope of its powers as agent for M. H. Goodwin (3 R. C. L. 634) and he therefore was affected with notice of all that the agent knew or should have known. *Bank of Hoxie* v. *Meriwether,* 166 Ark. 39, 265 S. W. 42. The circumstances surrounding this transaction were sufficient to warrant the inference that the appellant bank had actual knowledge of the unlawful conversion of public funds, and it is unquestionably true that Goodwin was benefited by such conversion, for he was able thereby to collect the value of two worthless checks. It is immaterial whether the proceeds were deposited to his individual account or to that of his wife, for he owed his wife, according to his own testimony, $3,800, and this was a payment of his indebtedness to his wife *pro tanto.* Therefore he is clearly liable under § 2833, C. & M. Digest, hereinbefore quoted.

It follows that the judgment of the trial court will be affirmed as to the appellant, Farmers' & Merchants' Bank of Bearden, and as to the appellee, M. H. Goodwin, is reversed, and it appearing that the case was fully developed in the court below, a judgment will be entered here against the said M. H. Goodwin for the amount converted, together with six per cent. interest thereon from November 21, 1928. It is so ordered.