Daniel MONTGOMERY, Jr. *v.* STATE of Arkansas

5596                                          473 S.W. 2d 885

Opinion delivered December 20, 1971

*M. J. Etoch, Jr* and *A. M. Coates,* for appellant.

*Ray Thornton,* Attorney General; *Henry Ginger,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This is a prosecution for first degree rape, in which the appellant was found guilty and sentenced to death. Finding reversible errors in the record, we discuss those matters and also such other questions as are apt to recur upon a new trial.

The prosecutrix, Laura Wolfe, age 18, was living with her mother in West Helena on the date of the offense, October 17, 1969. She testified that at about 11:00 a.m. a man whom she identified as the defendant knocked on the door, stated that he was a roof repairman, and asked permission to use the telephone to call his boss. Having gained entrance into the house in that manner, the man threatened the prosecutrix with a large, wide-bladed, shiny knife and forced her to submit to him in a bedroom. The prosecutrix's mother was in the house at the time, but she was unable to identify the intruder, because he compelled her to remain in a small closet while he was within the house.

At the trial a pivotal question of fact was Montgomery's identity, it being his steadfast contention that he was not the man who committed the offense. The prosecutrix was the only eyewitness to the crime. She bolstered her identification of the defendant by testifying that a butcher knife and a narrow-brimmed hat seized by the officers by means of a search warrant were similar to the knife held and the hat worn by the intruder on the day of the offense. This brings us to the appellant's first contention, that the search and seizure were unlawful.

That contention is well taken. It is now settled that "the affidavit for a search warrant must contain affirmative allegations of fact from which the magistrate [issuing the warrant] may independently decide for himself whether there is probable cause for the search." *Ferguson* v. *State,* 249 Ark. 138, 458 S. W. 2d 383 (1970), citing *Spinelli* v. *United States,* 393 U. S. 410 (1969), and

*Aguilar* v. *Texas,* 378 U. S. 108 (1964). In the case at bar the affidavit, completed upon an all-too-brief printed form, merely described the property to be seized as shoes with asphalt on them, a knife with a wide blade, a dark hat with a small brim, clothing worn during the rape, and asphalt in a truck. The printed form then went on to recite that "I do in truth suspect that such property is concealed" in the house or premises & 1964 Chev. ¼ truck occupied by Daniel Montgomery in the City of West Helena. That is all. It will be seen at once that the affidavit stated no fact whatever from which the magistrate might have independently decided for himself that there was probable cause for the search.

We are not overlooking the fact that while the objection to the evidence in question was being argued in chambers, a deputy prosecuting attorney who had assisted in the procurement of the search warrant added certain details that were purportedly included in an oral sworn statement made to the issuing magistrate. The deputy prosecutor's comments, however, were not made under oath, and we certainly cannot affirm a death sentence on the basis of unsworn remarks made by counsel in the course of an argument about the admissibility of evidence.

A related point, also bearing upon the vital issue of identity, concerns the admissibility of the testimony of Loretta Bailey. That witness testified that at about 8:15 on the morning of the crime a man whom she identified as Montgomery came to her house, about three blocks from the home of the prosecutrix, stated that he was a telephone company employee, and asked permission to make a telephone call. The man left when the witness told him that she did not have a telephone in her house.

We are of the view that Loretta Bailey's testimony was properly admitted. When the issue is one of identity, proof of other similar conduct by the defendant may be admissible to establish a modus operandi on his part. *Tarkington* v. *State,* 250 Ark. 972, 469 S. W. 2d 93 (1971). When we consider that the incident at Loretta Bailey's house occurred on the same day as the offense

charged, that it was only three blocks away, and that both occasions involved an attempt by Montgomery to obtain entrance into a woman's home by subterfuge, we are unable to say that the testimony was so irrelevant as to be inadmissible. Its weight, of course, was for the jury.

Next, the appellant objects both to the testimony of Loretta Bailey and to that of the prosecutrix, on the ground that their identification of Montgomery was tainted by means of separate police lineups at which they each picked out Montgomery as the man in question. We find no merit in the appellant's insistence that he was denied the assistance of counsel at the lineups, for there is no proof that he asked for, or was entitled to, the aid of a lawyer at those times. In that respect this case differs from *United States* v. *Wade*, 388 U. S. 218 (1967), because in that case the police knew that the accused already had engaged an attorney, yet they conducted the lineup without notice to the attorney. We do not read that opinion as holding that every lineup identification conducted in the absence of a lawyer is necessarily a denial of the accused's right to be represented by counsel.

The appellant raises a further question with respect to the lineup procedure. There are indications that the lineups were not conducted with complete fairness to the accused. In that situation, as the Supreme Court held in the *Wade* case, *supra*, the State must show by clear and convincing evidence that the witness's subsequent courtroom identification of the accused was based upon independent observations not tainted by the lineup procedure. Here we cannot say positively from the record that the trial court abused its discretion in allowing the witnesses to identify Montgomery in the courtroom, but we do suggest that the proof be developed in more detail upon a retrial of the case.

We find no merit in the appellant's insistence that he should be discharged for the reason that he was confined in jail for more than two terms of court without being brought to trial. Ark. Stat. Ann. § 43-1708 (Repl.

1964). After only one continuance that might be charged to the State, the accused was in fact brought to trial, but that hearing resulted in a mistrial, owing to a hung jury. It is our view that the defendant's statutory right to a speedy trial, within two terms of court, was satisfied by the first trial, so that the statute began to run anew after the mistrial. There is no contention that Montgomery was not again brought to trial before the elapse of more than one additional term of court. We are not willing to hold that an elapse of only one term before the mistrial can be added to the elapse of only one term after the mistrial to establish a violation of the statutory prohibition against the confinement of an accused for more than two terms of court.

We find no error in the trial court's method of qualifying the jury, with respect to the veniremen's beliefs about capital punishment. The court consistently excused for cause only those prospective jurors who said that they could not in any event vote to impose the death sentence. That procedure followed the Supreme Court's pronouncements in *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968), where the court expressly disclaimed any intent to rule upon "the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty."

Other irregularities in the procedure below are not apt to recur upon a new trial. The court erred in allowing the State to introduce an F. B. I. report that was admittedly hearsay. While the error may have been invited by the defense, it is not likely that a similar invitation will be issued upon a retrial. Much the same statement may be made about the State's cross examination of Montgomery with reference to prior arrests. It is possible that such a cross examination was invited by defense counsel's direct examination, but the situation is not likely to come up again. In any event, in no case should the prosecution be permitted to display within sight of the jury what is generally referred to as a "rap sheet," with the concomitant prejudicial implication that the accused is guilty of the prior charges inquired

about, even though his denial of guilt is conclusive upon the prosecution.

Reversed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached in this case and the majority opinion. I would add that I am of the opinion that the search was also invalid as to the clothing of appellant because it was mere evidence, and no authority then existed for issuance of a search warrant for this type of evidence. My views are expressed in a concurring opinion in *Ferguson* v. *State*, 249 Ark. 138 (1970), 458 S. W. 2d 383. The knife, of course, was allegedly an instrumentality of the crime, and a valid search warrant for it would have been authorized.