Curtis Hoyt YANCEY and Lee Roy Cloud
*v.* STATE of Arkansas

CR 00-1310 44 S.W.3d 315

Supreme Court of Arkansas
Opinion delivered May 24, 2001

*Sam T. Huer* and *James T. Lessmeister*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Jeffrey Weber*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Appellants Lee Roy Cloud and Curtis Hoyt Yancey appeal their conviction and sentence for violation of Arkansas Code Annotated Section 5-64-401 (Supp. 1999), for possession of a controlled substance with the intent to deliver. Both appellants filed conditional pleas of guilty pursuant to Ark. R. Crim. P. 24.3(b), whereby they reserved their right to appeal from the trial court's denial of their motion to suppress evidence seized during the a search of their homes. Both appellants were sentenced to four months confinement and four years probation.

This case was appealed to the court of appeals, which resulted in a 4–2 decision by that court that the warrants to carry out the searches were properly issued because the facts presented formed a substantial basis to conclude that probable cause existed and that marijuana would likely be found where appellants lived. *Yancey v. State*, 71 Ark. App. 280, 30 S.W.2d 117 (2000). The court of appeals additionally found that even if probable cause, was lacking, the search met the requirements of the "good faith exception" set out in *United States v. Leon*, 468 U.S. 897 (1984), in that the

judge determined there was probable cause and the police acted in reasonable reliance on the warrants issued. We granted a petition for review and now consider this matter. When we grant a petition for review pursuant to Ark. Sup. Ct. R. 2-4, we treat the appeal as if it were filed in this court originally. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 29 S.W.3d 706 (2000); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

We decline to follow the line of cases cited by the court of appeals and reaffirm our requirement that before a search warrant may issue, an affidavit must be presented to the magistrate that particularly sets forth the facts and circumstances tending to show that the things to be seized are in the place to be searched. Although we hold probable cause in the affidavit lacking, we hold that the officers acted in good faith on the issued warrant and hold that the *Leon* exception applied. We reverse in part and affirm in part.

*Facts*

On June 17, 1998, at approximately 9:30 p.m, Arkansas Game and Fish Officer David Evans observed a Jeep being driven down a road in a remote wooded area in Monroe County. He knew Yancey had been driving that Jeep for some time. Evans knew both Yancey and Cloud and had spoken with them before. Evans left his lights off and followed the Jeep. He then parked and observed appellants by use of night-vision equipment. He observed them remove containers of water from the Jeep and water plants growing in a tub, in an ice chest, and in the ground. Evans returned to his own vehicle and waited. He then followed appellants back to Cloud's residence in Arkansas County.

At Cloud's residence, Evans asked appellants what they were doing down that road. They responded, "Frogging." Evans testified in the suppression hearing that there were no frogs down that road. He also testified that he asked if they got any frogs, and they responded, "No." He then asked if he could look in the vehicle, and they consented. Evans testified he looked through the window and saw gallon jugs and five gallon cans, that there was no frog-gigging equipment, and that while Cloud was wearing hip waders, they had dry dust all over them. Evans testified he saw nothing in the Jeep other than the water containers.

After leaving appellants, Evans called Arkansas State Trooper Rosencrantz because he was not sure who to call given the plants were in Monroe County and appellants lived in Arkansas County. Apparently nothing came of that call. The next day, Evans called the Monroe County Sheriff's Department and was told that they would be overflying the area soon and that they would get back to him. He did not hear back from them that day, so the next day he went to Wendall Jines, a Criminal Investigative Division investigator for the State Police. Jines took Evan's deposition, and he and Evans returned to the plants. They believed they were marijuana plants. The plants were put under surveillance, but Yancey and Cloud never returned. Jines and Evans removed three plants the day they first went to examine the plants and an additional fifteen on the morning of June 22, 1998. On that same day, Evans appeared before Municipal Judge Norman Smith, at which time the search warrants were issued to search Cloud's home and Yancey's home. Evans was the sole source of information. Marijuana was found in each appellant's home.

*Standard of Review*

■ When reviewing a trial court's ruling on a motion to suppress, we view the evidence in a light most favorable to the State, make an independent determination based on the totality of the circumstances, and reverse only if the ruling was clearly against the preponderance of the evidence. *Miller v. State*, 342 Ark. 213, 27 S.W.3d 427 (2000); *Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648, cert. denied, 120 S.Ct. 321 (1999); *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998).

*Reasonable Cause*

In this case, search warrants were issued for two homes after appellants were observed watering eighteen marijuana plants in the woods five to six miles from their homes and then driving to Cloud's home. The plants in the woods were seized prior to the issuance of the search warrant. We also note that the water containers used by appellants were transported and were still in Yancey's vehicle when Officer Evans looked in the vehicle window.

The Fourth Amendment to the U.S. Constitution and Art. 2 § 15 of the Arkansas Constitution provide protection against general

search and seizure and require a warrant before a search may take place.

■ In Arkansas, the procedure for issuance of a search warrant is set out in Ark. R. Crim. P. 13.1. The portions of that rule relevant to the issues of this case provide:

> (b) The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched . . . . An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. . . .

Thus, probable or reasonable cause to believe the things subject to seizure will be found in the particular place identified is required, and this must be established by affidavit or recorded testimony. *See Nance v. State,* 323 Ark. 583, 918 S.W.2d 114 (1996); Ark. R. Crim. P. 10.1.

■ The cases hereinafter discussed refer to both reasonable cause and probable cause. In *Edwards v. State,* 300 Ark. 4, 775 S.W.2d 900 (1989), we indicated that there is no "substantive distinction" between the terms.

■ Whether the reasonable or probable cause requirement is met turns on the adequacy of the affidavit or recorded testimony. The test for adequacy of the affidavit set out in *Illinois v. Gates,* 462 U.S. 213 (1983), and adopted by this court in *Thompson v. State,* 280 Ark. 265, 658 S.W.2d 350(1983), was recently quoted by this court in *State v. Rufus,* 338 Ark. 305, 993 S.W.2d 490 (1990), whereby:

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *State v. Mosley,*

313 Ark. 616, 856 S.W.2d 623 (1993); *Rainwater v. State*, 302 Ark. 492, 791 S.W.2d 688 (1990).

*Rufus*, 338 Ark. at 312. In *Rufus*, this court also stated that the current Ark R. Crim. P. 13.1(b) incorporates the test set out in *Thompson*. Consistent with the requirement of substantial evidence of probable cause, Rule 13.1(b) requires "facts and circumstances tending to show that such person or things are in the places ... to be searched."

■ At issue in this case is the adequacy of Evans's affidavit. An affidavit is a sworn statement of facts. *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). Thus, an affidavit places facts before the magistrate so he or she may determine whether they provide a substantial basis for concluding that probable cause exists to issue the search warrant. *Thompson, supra.*

■ Although the existence of a fact may be proved by circumstances as well as by direct evidence, the circumstantial evidence must be sufficient to lead to the inference. *Merchant's Bank v. State Use Calhoun County*, 180 Ark. 994, 23 S.W.2d 624 (1930). Where circumstantial evidence is relied upon to establish a fact, "the circumstances proven must lead to the conclusion with reasonable certainty and must be of such probative force as to create the basis for a legal inference and not mere suspicion." *Wesson v. United States*, 172 F.2d 931, (8th Cir. 1949).

Examining the affidavit in this case reveals the following facts relevant to probable cause:

1. That at about 9:30 p.m. on the evening of June 17, 1998, Game and Fish Officer Evans observed appellants driving down a road in a remote wooded area and followed them;

2. That using night vision equipment, he observed them remove containers from their vehicle and water what he believed to be marijuana plants;

3. That Evans then followed appellants as they drove away and stopped at appellant Cloud's home; approximately five to six miles from the plants;

4. That Evans stopped at Cloud's residence and spoke with appellants and was told they were out frog gigging although Evans

believed it unlikely given a lack of water down the road they had taken;

5. That Evans asked and was given permission to look in Yancey's vehicle, and he saw only the before-mentioned water jugs and containers;

6. That on June 19, 1998, Evans returned to the plants with a county deputy and a state police officer and identified the plants as eighteen marijuana plants.

7. That three plants were removed on June 19, 1998;

8. That on June 22, 1998, Evans and two other officers returned to the wooded area and removed the remaining fifteen marijuana plants;

9. That Cloud had been convicted of possession of controlled substances on a number of occasions;

10. That information and intelligence developed by different law enforcement agencies working within Arkansas County indicated appellants had been, and continued to be, involved in propagation, preparation, consumption, and delivery of controlled substances, specifically marijuana.

The evidence offered in the affidavit may be divided into that regarding what Evans personally observed and that relating to appellants' alleged criminal conduct on prior occasions.

 We will dispense with the question of the prior criminal conduct first. This information is provided apparently to infer appellants are known criminals and known criminals would be expected to have the sought evidence in their homes. The known criminal averment is not only insufficient to support a finding of reasonable cause but is entitled to no weight whatsoever. The U. S. Supreme Court has referred to such an assertion as "a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising a magistrate's decision on a warrant." *Spinelli v. United States*, 393 U.S. 410, 414 (1969). Additionally, the "bald" assertion of prior criminal conduct alleging appellants had been and remained involved in growing and selling marijuana is nothing more than an unsubstantiated conclusion and is insufficient to support probable cause. *Beed v. State*, 271 Ark. 526, 609 S.W.2d 898

(1980). Additionally, Evans, a Game and Fish officer, is the declarant on the affidavit. Nothing in the affidavit is offered to show why a Game and Fish officer would have knowledge of investigations of different law enforcement agencies and, thus, the information is unsupported in any event. Affirmative allegations of fact are required. *Montgomery v. State*, 251 Ark. 645, 473 S.W.2d 885 (1971).

Thus, the conclusions asserted in the affidavit regarding Cloud's alleged prior criminal conduct must be ignored in analyzing whether probable cause was shown. The State argues that the challenge to the information of prior criminal conduct was not preserved below. Whether that is so is of no import. If the issue was not preserved, then appellants here may not challenge the factual inference arising therefrom. However, this type of evidence has been rejected as giving rise to any credible inference and, therefore, it still must be ignored by this court because below it could not have given rise to any inference by the magistrate. *See Spinelli, supra; Beed, supra.*

We now move to the evidence arising from what Evans observed. There is no direct evidence to support reasonable cause. The analysis then becomes whether the direct evidence in the facts offered by Evans in his affidavit may constitute circumstantial evidence sufficient to provide an inference to support reasonable cause to believe contraband or evidence of a crime would likely be found in appellants' homes.

The affidavit clearly shows the identified contraband was eighteen marijuana plants, all of which were seized by officers. Evans observed the appellants watering the plants some five to six miles from the homes to be searched. He also testified of seeing the watering containers in Yancey's Jeep when he stopped to speak with them at Cloud's home. Evans was unable to provide any testimony whatever that any portion of any marijuana plant or anything connected with the propagation was likely to be found in the homes to be searched. The facts to which Evans testified might well lead to conviction for propagation of marijuana, and likely possession with the intent to sell. However, no facts are provided that infer in any way that the homes were involved. Thus, there was neither direct nor circumstantial evidence to support reasonable cause to believe contraband or evidence of a crime would likely be found in the homes to be searched.

The court of appeals reached a contrary conclusion based upon their reading of holdings in several federal circuit court cases. We

decline to adopt their analysis. These cases seem to rely upon a conclusion that the magistrate issuing the search warrant "need only conclude that it is reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock*, 761 F.2d 1313, (9th Cir. 1985 ), *cert. denied*, 474 U.S. 847 (1985). The test is not whether it is reasonable to believe a suspect would have evidence in the place to be searched. Instead, the test is whether there is reasonable cause to believe contraband or evidence of the crime would likely be found in the place to be searched.

The First Circuit Court of Appeals characterized this same idea more bluntly, stating:

> The nexus between the objects to be seized and the premises to be searched need not, and often will not, rest upon direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]....'

*United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999) (quoting *United States v. Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979)). Again, there is reliance upon what must be termed presumptions on generalized behavioral patterns of a certain class of criminals.

One must conclude that a number of federal circuit courts now allow issuance of a search warrant based not upon an affidavit providing facts to show or infer reasonable cause to believe contraband or evidence of a crime will likely be found in the place to be searched, but rather upon an affidavit only supplying facts to show or infer reasonable cause to believe the person is a drug dealer, and the court by presumption will supply the lacking inference that the affidavit should have supplied. The Ninth Circuit Court of Appeals in *Pitts v. United States*, 6 F.3d 1366 (1993), quoting *United States v. Terry*, 911 F.2d 272, (9th Cir. 1990)(quoting *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986), stated, "[i]n the Ninth Circuit we have recognized that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.' " In *United States v. Lamon*, 930 F.2d 1183 (7th Cir. 1991), the court of appeals stated:

> Warrants may be issued even in the absence of '[d]irect evidence linking criminal objects to a particular site *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985); see also, *United States v. Malin*, 908 F.2d 163, 165 (7th Cir.), *cert. denied*, 498 U.S. 991, 111 S. Ct. 534, 112 L. Ed.2d 544 (1990). An issuing court " 'is entitled to

draw reasonable inferences about where evidence is likely to be kept, based upon the nature of the offenses.' " *Id.* At 166 (quoting, *Angulo-Lopez*, 791 F.2d at 1399)....

*U.S. v. Lamon,* 930 F.2d at 1188.

This line of reasoning has been criticized by other courts. *See State v. Thein*, 138 Wash.2d 133, 977 P.2d 582 (Wash. 1999). In *Thein,* the Washington Supreme Court stated, "Probable cause requires a nexus between criminal activity and the item to be seized and also a nexus between the item to be seized and the place to be searched." *See also Guth v. Commonwealth of Kentucky*, 29 S.W.3d 809 (Ky. Ct. App. 2000).

██ ██ For a search warrant to issue, evidence, either direct or circumstantial, must be provided to show contraband or evidence of a crime sought is likely in the place to be searched. Standing alone, circumstantial evidence that the suspect may be a drug dealer is not circumstantial evidence that anything is in his home. At best, the circumstantial evidence here infers that appellants are drug dealers. To then allow an inference that they likely have contraband or evidence of a crime in their homes is to base an inference upon an inference, which is also known as mere suspicion or speculation. It is not allowable under the rules of evidence to draw one inference from another or to indulge presumption upon presumption to establish a fact. Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture. *Williams v. State*, 222 Ark. 458, 261 S.W.2d 263 (1953).

In coming to their conclusions, the federal circuit courts appear to rely upon *Gates v. Illinois, supra.* In that case the U. S. Supreme Court abandoned its earlier "two pronged" test of *Aguilar v. Texas,* 378 U.S. 108 (1964), and *Spinelli, supra,* and in its place reaffirmed the traditional "totality of the circumstances" analysis and stated:

> The task of the issuing magistrate is simply to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is

simply to ensure that the magistrate had a 'substantial basis for...concluding' that probable cause existed.

*Gates v. Illinois,* 462 U.S. at 238-239. Probable cause has not been abandoned. The Court then gives two examples of earlier cases that set the limits beyond which a magistrate may not venture in issuing a warrant. These examples are quite instructive. Each case involved an affidavit which included facts that the items to be seized would likely be found in the place to be searched, but the affidavits were found inadequate because they were conclusory. The U.S. Supreme Court then goes on to note that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause...." *Gates v. Illinois,* 462 U.S. at 239. Nowhere does the Court appear to abandon the requirement that the affidavit provide facts showing that the items to be seized will most likely be found in the place to be searched. The affidavit in the case at bar is devoid of any direct or circumstantial evidence of marijuana or any contraband or that evidence of a crime would likely be found in the two homes searched.

 The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that specific things to be searched for and seized are located on the property to which entry is sought. *Zurcher v. Standford Daily,* 436 U.S. 547, 98 S. Ct. 1970 (1978). *Accord Gates v. Illinois,* 462 U.S. at 238, (a fair probability that contraband or evidence of a crime will be found in a particular place). *See also United States v. Malin,* 908 F.2d 163, (7th Cir. 1990). The affidavit must provide facts by direct or circumstantial evidence that there is reasonable cause to believe the specific things sought are located on the property to which entry is sought.

Here, one might argue it is reasonable to infer that persons who are watering marijuana plants in amounts allowing a statutory inference of intent to deliver must be processing it somewhere, and from that inference it might seem reasonable to then infer that their homes are the most likely place for processing. General experience of law enforcement would likely bear out this deduction. However, the test is not whether it is reasonable to believe items to be seized might be found in the place to be searched, but rather whether there is evidence presented to support reasonable cause to believe the items to be seized would likely be found in the place to be searched. There is nothing in Evans's affidavit as to the maturity of the marijuana plants or whether the plants were ready to be harvested for processing. This case is further complicated because there

is no direct evidence that there is any marijuana beyond that seized in the woods. The eighteen marijuana plants were seized and removed to the sheriff's office prior to the affidavit and the search warrant being issued. Thus, how may one then infer where marijuana or other evidence of the crime might reasonably be kept if there is no evidence in the beginning to infer any exists? We also note five days passed from the observance of criminal activity to application for the warrant. A delay in applying for a warrant can diminish probable cause, although the delay is not considered separately, and the length of the delay is considered together with the nature of the unlawful activity and in the light of common sense. Under the facts of this case, the passage of five days from observance of the criminal activity five miles away in the woods to the date the warrant was sought does nothing to increase confidence in the conclusion of probable cause reached by the magistrate.

The State is asking the court to hold that a conclusory allegation in an affidavit for a search warrant that an individual sells drugs would be probable cause to issue a search warrant for that individual's home because drugs are likely to be found where drug dealers live. *See U.S. v. Pitts, supra.* The rule the State proposes would expand our court's opinions and rule that probable cause to search a certain location must be based on a factual nexus between the evidence sought and the place to be searched. This we will not do.

 We hold that the affidavit fails to supply sufficient evidence to satisfy Rule 13.1 and our case law. This state requires "probable cause to believe that the place to be searched contains evidence of the crime." *Nance v. State,* 323 Ark. 583, 918 S.W.2d 114 (1996) (citing *Johnson v. State,* 270 Ark. 247, 604 S.W.2d 927 (1980), cert. denied, 450 U.S. 981 (1981)).

### Good-Faith Exception

The State argues that regardless of whether we hold the affidavit and search warrants defective, the *Leon* good-faith exception applies, and the suppression of the evidence seized as a result of the search warrants is not required.

 The good-faith exception was adopted in Arkansas in *McFarland v. State,* 284 Ark. 533, 684 S.W.2d 233 (1985). The general rule for the application of the Fourth Amendment exclusionary rule to evidence seized under an invalid warrant is discussed in *Leon.* In *Leon,* the Court fashioned a good-faith exception to the

requirement of a valid warrant so that suppression of evidence would not be appropriate when a law enforcement officer acted in good-faith reliance on a facially-valid warrant. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993).

█ The U.S. Supreme Court in *Leon* noted that the Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands. The Court further noted that an examination of the Fourth Amendment's origin and purposes makes it clear that the use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong. The exclusionary rule rather works to deter future violations generally. *Leon*, 468 U.S. at 906. The Court then went on to note that if the goal is to deter future police misconduct, then it only makes sense to apply the exclusionary rule where indeed its application has a deterrent effect, and that where the officers acted in objective good faith or where the transgressions are minor, the magnitude of the benefit conferred upon guilty defendants offends the basic concepts of the justice system. *Id.* at 907. The Court found that in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically correct, and that once the warrant issues, there is literally nothing more the officer can do in seeking to comply with the law. *Leon, supra; Starr v. State*, 297 Ark. 26, 759 S.W.2d 535 (1988). *Leon* holds that objective good-faith reliance by a police officer on a facially-valid search warrant will avoid the application of the exclusionary rule in the event the magistrate's assessment of probable cause is found to be in error. Under this rule, the rationale is that the exclusionary rule is designed to deter misconduct on the part of police rather than to punish them for errors on the part of magistrates. *Jackson, supra.*

██ The Court in *Leon* further concluded that suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Leon*, 468 U.S. at 923; *See also Franks v. Delaware*, 438 U.S. 154 (1978). Appellants argue that Evans's affidavit was misleading in violation of *Franks* because Evans did not state that he did not find marijuana in the Jeep. In *Pyle* we stated:

> Neither *Franks* nor *Leon* specifically mentions omissions, but the standards they articulate require a knowing intent to deceive, or a reckless disregard of truth. Applying that standard, it would seem

that matters omitted must be material circumstances which contradict or dispel the incriminating factors in the affidavit. *Leon* states that the good faith standard does not preclude inquiry into the knowing or reckless falsity of the affidavit itself. Therefore, such omissions would need to render what is in the affidavit effectively false because of their nondisclosure.

*Pyle*, 314 Ark. at 175.

Here, Evans failed to include in his statement that he did not find marijuana in the Jeep. However, it is obvious from reading the affidavit that Evans did not find marijuana in the Jeep because he stated that he found only plastic jugs and a five-gallon metal can. Thus, the omission of not finding marijuana in the Jeep does not render what is in the affidavit effectively false. It has not been proven that this omission was done with a knowing intent to deceive or a reckless disregard of truth. The omission that he did not see marijuana in the Jeep is not a material circumstance that contradicts or disputes the incriminating factors in the affidavit that he only saw plastic jugs and a five-gallon metal can. Evans's listing of what he found would lead any magistrate reading the affidavit to understand that all Evans found in the Jeep was the plastic jugs and the five-gallon metal can, but that no marijuana was found. What else would Evans be looking for? If Evans had found marijuana, he would have so stated in his affidavit. Evans did not mislead Judge Smith. We conclude that the omission does not meet the test provided by *Franks* to suppress the seized evidence.

Here the officers serving the warrant relied upon the finding of probable cause by the magistrate. They knew the appellants had been observed watering a substantial amount of marijuana in the woods and, in fact, at least one of the officers had been involved in the investigation and seizure of those plants. They knew that Evans, after observing the appellants watering the marijuana plants, had followed the appellants to Cloud's home, that appellants lied to Evans as to what they had been doing the wooded area, and that appellants had their watering containers in their Jeep when Evans questioned them. They believed they were investigating the manufacture and distribution of marijuana. While there may have been a lack of probable cause to search the houses, they were acting in good faith on a determination of probable cause by the magistrate. In addition, because we have a split of authority in that some courts, such as the Ninth Circuit Court of Appeals, justify a search of the dealer's residence when facts infer reasonable cause to believe a person is a drug dealer, we cannot say that the reasonably well-

trained police officer was not acting in good faith. Therefore the good-faith exception applies. *Pyle, supra.* The evidence marijuana seized from the appellants home should not be suppressed.

We affirm in part and reverse in part.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. I agree with the majority opinion in certain critical respects. First, I, too, would disavow the principle that the mere fact a person is a drug dealer establishes probable cause to search that person's home. That principle was best illustrated in a statement by the Ninth Circuit Court of Appeals:

> In the Ninth Circuit, we have recognized that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990) (quoting *United States v. Angulo-Lopez*, 791 F.2d at 1394, 1399 (9th Cir. 1986)).

*United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993). The State endorsed the position of the Ninth Circuit at oral argument in the instant case. Were we to likewise adopt the position that dealing drugs automatically justifies a search of the dealer's home, we would be effectively undermining the Fourth Amendment.

In addition, I agree with the majority that Officer Evans was acting in good faith, as defined by *United States v. Leon*, 468 U.S. 897 (1984), when he filed his affidavit for a search warrant. The Court in *Leon* looked to an objective standard of whether a reasonably well trained police officer would have believed that probable cause for a search warrant existed. As already indicated, certain jurisdictions like the Ninth Circuit Court of Appeals believe that the mere fact of drug dealing is enough to justify a search of the dealer's residence. Certainly, when there is a basis in court decisions for that position, I cannot say that Officer Evans was acting other than in good faith in this case.

Where I disagree with the majority is in its conclusion that there was no reasonable nexus between the cultivation of marijuana and Cloud's residence to justify the issuance of a search warrant. Officer Evans's affidavit set out the following:

- He personally observed Yancey and Cloud exit their Jeep, carry water jugs to the field, and water what appeared to be marijuana plants at 9:30 p.m. on June 17, 1998.

- Officer Evans followed the Jeep back to Cloud's residence and talked to both men.

- The men told Officer Evans they had been "frogging," which did not comport with what he had just seen.

- Officer Evans looked in the back of the Jeep and saw several empty plastic jugs, some partially filled jugs, and a metal five-gallon can.

- On January 19, 1998, Officer Evans returned to the marijuana patch with two other law enforcement officers and found eighteen marijuana plants growing either in the field or in containers.

- On June 19 and June 22, 1998, the officers harvested the marijuana plants for evidence. Two plants were found growing in plastic buckets in the field.

- Cloud, over the past several years, had been convicted for possession of controlled substances on a number of occasions.

Officer Evans's affidavit, in my judgment, showed a direct connection between the cultivation of the marijuana and Cloud's residence. The officer followed the two men directly from the marijuana patch to Cloud's residence and observed water jugs and a metal container in the back of the Jeep at the residence. Later, police officers found two marijuana plants in "plastic buckets" out at the patch. I think a reasonable inference could be made that the plastic jugs were not only used for watering but also as containers for the marijuana plants. Indeed, State Police Investigator Wendall Jines testified at the suppression hearing that marijuana plants are usually started in a house or shed in small containers and then transferred to the woods until harvesting. Investigator Jines testified that in the residences or sheds where the plants are started, the police usually find potting soil, grow lights, fertilizers and the like. After harvesting, dried leaves and buds are found in the residences or sheds which are used for processing the marijuana. Investigator Jines was not aware of any other place where inside growing or processing by Yancey and Cloud could take place other than their residences.

Thus, the marijuana had to be processed somewhere, that is, converted from raw, plant matter into a product marketable on the street. Though I disagree that dealing drugs justifies an automatic search of a dealer's home, I certainly believe that one factor in establishing reasonable cause to search a cultivator's residence is that the marijuana had to be processed at a location other than the field, and a cultivator's home is a reasonable location for that work to be done. And, again, in the case of Yancey and Cloud, Officer Evans followed them from the field to Cloud's home and saw the jugs in the Jeep. Investigator Jines testified that those were the only places he knew of which were available to the two men for cultivating and processing marijuana.

Officer Evans, a sheriff's deputy, and a state police officer investigated this matter over a period of six days and put together their case for the municipal judge. I conclude that a direct connection was made between the marijuana patch and Cloud's home, although I agree with the majority that a connection was not established for Yancey's home. Accordingly, I would affirm the trial court's denial of the motion to suppress with respect to Cloud's residence on the basis that the trial court's ruling was not clearly against the preponderance of the evidence. *See Nance v. State*, 323 Ark. 583, 918 S.W.2d 114 (1996). I would affirm the search of Yancey's residence because Officer Evans met the objective standard of good faith under *United States v. Leon, supra*. Thus, I concur with the majority decision in part and dissent in part.