Theodore WIDEN II and Phyllis Charmayne Widen  *v.*
STATE of Arkansas

CA CR 03-895                                   185 S.W.3d 94

Court of Appeals of Arkansas
Division I
Opinion delivered May 26, 2004

*Montgomery, Adams & Wyatt, PLC,* by: *Dale E.Adams,* for appellants.

*Mike Beebe,* Att'y Gen., by: *Jeffrey Weber,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. This appeal follows the entry of conditional guilty pleas by appellants Theodore and Phyllis Widen. The Widens moved the trial court to suppress the evidence seized following a search of their house, arguing that the warrant to search was not supported by probable cause. The trial court denied that motion, they pleaded guilty[1], and this appeal resulted. We affirm because the trial court did not clearly err in finding probable cause upon which to issue the search warrant.

In reviewing the trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Cummings v. State,* 353 Ark. 618, 110 S .W.3d 272 (2003); *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003). Rule 13.1 of the Rules of Criminal Procedure sets out the requirements for the issuance of a search warrant. The Rule requires the affidavit to recite facts and circumstances tending to show that such persons or things are in the places to be searched. The task of the magistrate who issues the warrant.is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[1] Appellants negotiated their charges down. Theodore pleaded guilty to simultaneous possession of drugs and firearms and also criminal attempt to manufacture methamphetamine, for which he received a ten-year prison sentence. Phyllis pleaded guilty to criminal attempt to manufacture methamphetamine, for which she received ten years of probation and a fine.

place. *Illinois v. Gates*, 462 U.S. 213 (1983). We apply the totality-of-the-circumstances test in determining whether the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Stephenson v. State*, 71 Ark. App. 254, 29 S.W.3d 744 (2000).

With these standards in mind, we consider the evidence presented to the magistrate who issued a search warrant for the Widen residence at 113 Battles Loop, Greenbrier, Arkansas. The affidavit was prepared on February 3, 2001. 'A Conway police officer assigned to the Conway Regional Drug Task Force, Travis Thorn, swore in his affidavit that he had good reason to believe that at this address there was methamphetamine, precursors and chemicals used in manufacture, and other related items. The facts establishing his basis for the request for the warrant were as follows:

(1) A woman matching Phyllis's description was observed in the early part of December 2000 at a Kroger store in Conway by a Faulkner County sheriff's deputy working as security. The woman attempted to purchase a case of matches. She did not have enough money, so she bought 3/4 of the case, which was 18 boxes. She left in a black and silver 1989 Chevrolet truck with a chrome tool box in the back, license plate ZAT 226, registered to Mary Helton or P.C. Junyor at 133 Battles Loop in Greenbrier. A Kroger employee verified to the deputy that this same woman bought a large number of matches one week prior.

(2) On December 10, 2000, Conway police officer Mike Rice, working off duty as security for Wal-Mart in Conway, watched two persons matching the description of appellants as they bought a large amount of cold medicine that contained pseudoephedrine. They left Wal-Mart in a similar looking truck with a chrome toolbox in the back, but it had a different license number indicating dealer tags belonging to a North Little Rock auction business. The woman was driving. Officer Rice identified appellants by their driver's license photographs in state records.

(3) On February 2, 2001, a Conway Farmer's Cooperative employee informed the Faulkner County Sheriff's office that a white man wearing a mechanic shirt with the name "Helton" on it purchased three bottles of iodine at about 1:00 p.m. and left in a tan Jeep Wrangler. The license plate, 852 DEZ, was registered to a 1995 tan Jeep Wrangler owned by appellants Phyllis C. Widen or Theodore Widen at 113 Battles Loop, Greenbrier, Arkansas.

(4) At about 2:45 on February 2, 2001, the affiant/officer went to Helton's Wrecker and Repair Service in Conway, and there he found the tan jeep. At 3:00, he saw a white man wearing a mechanic's shirt come out and meet a white female in the parking lot next to the jeep. The white female then left in the truck identified in fact #1 by the same description and license plate, registered to the same owners at the same address as in fact #1. After calling for assistance, affiant/officer and two other officers followed the truck, watching the female visit nine stores in Conway, Morrilton, Plumerville, and Greenbrier, one after the other. The stores were listed in order, as were the purchases that officers were able to actually observe relevant to the request for the warrant: Racetrack Gas Station in Conway, BP's Gas Station (two packs of cold medicine), Petit Jean Liquor Store in Morrilton, Phillips 66, Wal-Mart in Morrilton (air tubing and two boxes of matches), Kroger in Morrilton across the street from Wal-Mart, Big Star Grocery Store in Morrilton (two more boxes of matches), Texaco Gas Station in Plummerville, and Greenbrier Supercenter Grocery Store in Greenbrier. The woman then drove the truck directly to appellants' residence at 133 Battles Loop, Greenbrier, Arkansas.

(5) The affiant declared that his experience and training indicated that multiple-store purchases are common in the manufacture of methamphetamine in order to avoid detection.

(6) An officer performed a utility check on the residence, which were in Phyllis Widen's name.

(7) The ACIC showed that appellant Phyllis Widen had two aliases — Phyllis Johnson and Phyllis Junyor.

(8) The officer stated his training and experience in clandestine drug-lab detection, noting that pseudophedrine pills, iodine, air tubing, and red phosphorous extracted from striker plates on matches are used in manufacturing methamphetamine.

The affidavit requested that a warrant issue to search the residence, all vehicles, and surrounding curtilage. The judge, satisfied that probable cause existed, issued the warrant to be executed in the daytime. A search of their house followed on the day after the warrant issued, which led to the discovery of drugs, drug paraphernalia, weapons, and ingredients and equipment used for making methamphetamine.

In their motion to suppress, appellants argued to the trial judge that there was no basis to believe that any contraband would be found in their house given that these were entirely legal

substances, citing to *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001), and *Bennett v. State*, 345 Ark. 48, 44 S.W.3d 310 (2001). The State and the trial court disagreed with appellants.

Appellants urge again on appeal that all the officers had was intermittent purchases of legal items that were driven in vehicles owned by Phyllis to appellants' residence. Appellants argue that this is merely a possibility of what the legal items could be used for and that it was a bare conclusion that manufacturing was taking place at the house. After our de novo review, we do not believe that the totality of the circumstances indicates that the trial judge clearly erred in finding probable cause to exist to search for contraband at that address.

■ In *Bennett v. State, supra*, an officer passed by a storage building and smelled a strong odor of unstable denatured alcohol. He sought a search warrant, which was granted. The trial court agreed that this smell of a legal substance, alone, was insufficient to provide probable cause, but good-faith reliance on the warrant saved the search. On appeal, the supreme court also agreed that a single odor of a legal substance could not provide probable cause to search, but further held that good-faith reliance was inapplicable because a reasonably trained objective officer would not rely on this warrant because it was so lacking in indicia of probable cause. The *Bennett* opinion remarked that in *United States v. Tate*, 795 F.2d 1487 (9th Cir. 1986) (*Tate* II), the federal court accepted a good-faith argument where the warrant was initially based upon the smell of ether, but there were other circumstances that lent support to the conclusion that drugs were being manufactured on premises (surveillance showed suspicious activity; several anonymous calls were made about the premises). Appellants argue that, likewise, the compilation of these legal substances into the vehicles owned by appellants and registered to their home address did not alone support probable cause and that good faith does not apply. The present appeal is distinguishable from *Bennett, supra*, because in this affidavit, there were several substances being purchased in succession known to be used in manufacture of methamphetamine, and it was important that after the multi-store stops by the woman in Phyllis' truck, she then drove directly to appellants' home address.

■ Nor are we persuaded by *Yancey v. State, supra*. Appellants Yancy and Cloud were observed watering marijuana plants in a remote area of Monroe County late in the evening. A search

warrant was issued for their homes, five or six miles away. The supreme court cited *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999), for the proposition that the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. In *Yancey v. State, supra,* there was no evidence to support an inference that their homes were involved in the growing or distribution of marijuana where the contraband was found planted in the ground miles away. In other words, there was no link or nexus between the things to be seized and the place to be searched. *See id.* In contrast, in the case on appeal today, multiple known components used in methamphetamine manufacture were driven directly to the residence on 133 Battles Loop Road.

■ ■ The State further offers that if probable cause to issue the warrant was lacking, the officers still acted in good-faith reliance upon the warrant. The goal of suppression is to deter improper behavior of an officer, which would not be furthered if the trial judge made the mistake in issuing the warrant. When an officer relies in good faith on a search warrant that is later determined to be unsupported by probable cause, any evidence discovered by reason of that search will not be suppressed. *United States v. Leon*, 468 U.S. 897 (1984); *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998). The query is whether it was objectively reasonable for a well-trained police officer to conclude that the search was supported by probable cause. *Moya, supra.* In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. *Id.* Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. *See Yancey v. State, supra.* Because we believe that the trial judge properly denied the motion to suppress because probable cause existed, we do not address this alternate basis to affirm.

Affirmed.

STROUD, C.J., agrees.

GLADWIN, J., concurs.

ROBERT J. GLADWIN, Judge, concurring. I concur with the result reached by the majority, but I write separately

because I would affirm based on the good-faith exception. Although the existence of a fact may be proved by circumstances as well as direct evidence, the circumstantial evidence must be sufficient to lead to the inference. *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001). Where circumstantial evidence is relied upon to establish a fact, "the circumstances proven must lead to the conclusion with reasonable certainty and must be of such probative force as to create the basis for a legal inference and not mere suspicion." *Id.*, citing *Wesson v. United States*, 172 F.2d 931 (8th Cir. 1949). The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that specific things to be searched for and seized are located on the property to which entry is sought. *Yancey, supra.* Other than the fact that the vehicles were registered to appellants' address and the fact that Phyllis drove to that address after purchasing a few suspicious items, no evidence was presented that would lead to the conclusion that items to be seized would likely be found at the residence where officers executed the warrant two days later. While it might be reasonable to assume that appellants were gathering the necessary ingredients to cook methamphetamine at their residence, I believe the circumstances here provided a somewhat tenuous link between appellants' residence and any contraband or evidence to be seized. Accordingly, I concur because the officers acted in good-faith reliance on the search warrant that was issued.